**TWENTY–NINE PALMS BAND OF MISSION INDIANS, Plaintiff,**

v.

**Pete WILSON, et al., Defendants.**

**No. CV 95–5177 MRP.**

United States District Court, C.D. California.

May 8, 1996.

**1472**

Arter & Hadden, Edwin W. Duncan, Katessa M. Charles, Los Angeles, CA, for Plaintiff.

Daniel E. Lungren, Attorney General of the State of California, Anne L. Mendoza, Deputy Attorney General, Los Angeles, CA, for the Defendants.

## OPINION

PFAELZER, District Judge.

## I. INTRODUCTION

This is an action for declaratory relief by plaintiff Twenty–Nine Palms Band of Mission Indians ("plaintiff" or the "Tribe"), a federally recognized Indian tribe, against state officials and entities including Governor Pete Wilson and the California State Athletic Commission (the "State Athletic Commission") and its Executive Officer, Richard De Cuir ("De Cuir") (collectively "defendants"). The dispute between the parties concerns the jurisdiction of the State through the State Athletic Commission to regulate and/or license boxing events staged and promoted or co-promoted by the Tribe on the Tribe's reservation.

Specifically, the Tribe seeks a declaration (1) that the defendants have no jurisdiction or authority to regulate or require the licensing of boxing events that are staged and promoted by the Tribe on the Tribe's reservation; (2) that California Business & Professions Code § 18600 et. seq. (popularly known and hereinafter referred to as the "Boxing Act") does not apply to boxing events staged and promoted by the Tribe on the Tribe's reservation; and (3) that defendants have no jurisdiction or authority to fine or suspend any California licensee who participates in

such boxing events. The defendants have filed a cross-complaint for declaratory and injunctive relief seeking (1) a declaration with respect to the applicability of the Boxing Act to boxing events held on tribal land; and (2) an injunction enjoining the Tribe and all persons acting in concert with the Tribe from promoting professional boxing events absent approval by the State Athletic Commission until the Tribe is licensed as a boxing promoter by the State Athletic Commission.

Before the Court are the parties' cross-motions for summary judgment. The Court concludes that because California's boxing laws are civil/regulatory rather than criminal/prohibitory, the state is without jurisdiction to enforce them on tribal lands. For this reason, the Court grants the Tribe's motion for summary judgment and denies the defendants' cross-motion for summary judgment.

## II. FACTUAL BACKGROUND

The facts in the case are straightforward and undisputed.[1] The Tribe is a federally recognized Indian tribe with the sovereign power of self-government. Until the Tribe started to pursue commercial gaming activities on its reservation pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721 ("IGRA"), the Tribe did not engage in any economic or commercial activities and had no income except for that generated by leasing portions of its reservation for ranching and for placement of highway billboard signs. In November 1993, the Tribe's General Council—the Tribe's governing body—adopted the Gaming Activity Ordinance which authorized gaming activity on the reservation pursuant to IGRA. The Gaming Activity Ordinance established the Twenty–Nine Palms Band of Mission Indians Tribal Gaming Commission (the "Tribal Gaming Commission") and vested in the Tribal Gaming Commission the responsibility for on-site regulation, control and security of the gaming facilities and operations. The Tribe constructed a gaming facility on its reservation that includes a casino and a large indoor

---

1. The following discussion of facts is taken from a joint stipulation of facts filed by the parties on March 11, 1996.

amphitheater that is used for bingo and other special events. Since the commencement of commercial gaming on the reservation, each member of the Tribe has received a pro-rata portion of the gaming activities proceeds.

On June 2, 1995, the State Athletic Commission announced that no federal or California laws exempted State Athletic Commission regulation of boxing contests that are held on Indian reservations in California and that all persons who participated in such contests would be subject to civil and criminal penalties. On June 22, 1995, before any boxing events were held, the Tribe's General Council passed a resolution forming the Twenty–Nine Palms Band of Mission Indians Tribal Athletic Commission (the "Tribal Athletic Commission") to serve as the governing and regulatory body for boxing events held on the reservation. The Tribe also retained the United States Boxing Association ("USBA") to assist in the creation of the regulatory structure necessary to conduct professional boxing events on the reservation.

On August 3, 1995, the Tribe's General Council adopted rules and regulations governing the conduct of boxing events. The Tribe's rules were prepared by the USBA and are a compilation of the rules and regulations from various states including California. By their terms, the rules govern all professional boxing matches staged and promoted or co-promoted by the Tribe on its reservation.

Through September 22, 1995, three professional boxing events were conducted on the reservation under the authority of the Tribal Athletic Commission in accordance with the rules adopted by the Tribe's General Council. However, pending resolution of this lawsuit, the Tribe has decided it will conduct no professional boxing events on its Reservation without the consent of the State Athletic Commission.

The Tribal Athletic Commission requires that all boxers who participate in professional boxing contests on the reservation obtain a license from the Tribal Athletic Commission. To obtain a license, a prospective participant must pass a physical examination which includes HIV testing. The Tribal Athletic Commission will not license anyone who is

perceived to be unable physically to box or who is under suspension by some other licensing authority.

Not all boxing in California is regulated by the state. The State Athletic Commission does not regulate or license boxing events that are conducted under the supervision or control of an entity of the United States Government. Nor does the State Athletic Commission regulate or license boxing events conducted by or participated in exclusively by schools, colleges or universities and their students. Moreover, the State Athletic Commission authorizes California non-profit boxing organizations to promote and conduct amateur boxing events and to administer the State Athletic Commission's rules and regulations in connection with these events. Recreational boxing is conducted by health clubs and public recreation districts in California without regulation or licensing by the state. Finally, boxing equipment is sold in department and sporting good stores without state regulation.

In 1872, California made all forms of boxing a crime by enacting California Penal Code Section 412. Boxing was decriminalized by the California voters by initiative in 1924.

## III. ANALYSIS

### A. *Legal Standard for Summary Judgment*

■ Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). In this case, the parties have stipulated to all facts necessary for resolution of the motions for summary judgment. The parties dispute only whether, based on the undisputed facts, the state has jurisdiction to enforce its boxing laws on tribal lands. This legal question is appropri-

ately resolved on motions for summary judgment.

### B. *State Jurisdiction Over Indian Reservations*

"Historically, the power to legislate in both criminal and civil matters concerning Indians and their acts and conduct upon their reservations lay exclusively with the Congress and the tribes themselves." *Confederated Tribes v. State of Washington,* 938 F.2d 146, 147 (9th Cir.1991), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1704, 118 L.Ed.2d 412 (1992). The Tribe contends that its sovereignty (over both the Tribe members and Tribal lands) is dependent on and subordinate to only the federal government and not the states, and that such sovereignty precludes defendants' regulation of boxing on tribal lands. Defendants contend that Congress has consented to their exercise of jurisdiction over the Tribe (and thus consented to defendants' regulation of boxing on Tribal lands) pursuant to Public Law 280 which delegates to states certain civil and criminal powers over conduct occurring on reservations. *See* Pub.L. No. 280, 67 Stat. 588 (codified as amended in 18 U.S.C. § 1162, 28 U.S.C. § 1360). Defendants also contend that even absent Public Law 280's express grant of jurisdiction over reservations, the state nevertheless may assert jurisdiction over the Tribe's reservation because of the sufficiency of the state's justification for the exertion of its authority.

■ Under Public Law 280, Congress granted six states, including California, the right to extend their *criminal* jurisdiction over offenses committed on tribal lands, but granted the states only very limited *civil* jurisdiction over these lands. *Rumsey Indian Rancheria Wintun Indians v. Wilson,* 41 F.3d 421, 425 (9th Cir.1994), *as amended,* 64 F.3d 1250 (9th Cir.1995). Therefore, "when a State seeks to enforce a law within an Indian reservation under the authority of Public Law 280, it must be determined whether the law is criminal in nature, and thus fully applicable to the reservation ..., or civil in nature." *California v. Cabazon Band of Indians,* 480 U.S. 202, 208, 107 S.Ct. 1083, 1088, 94 L.Ed.2d 244 (1987). If the state law is classified as criminal/prohibitory,

California possesses jurisdiction to enforce the law on tribal lands, but if the law is deemed civil/regulatory, the law may not be imposed on the reservation. *See Confederated Tribes,* 938 F.2d at 147; *Quechan Indian Tribe v. McMullen,* 984 F.2d 304, 306 (9th Cir.1993) ("If the law is classified as criminal/prohibitory, California possesses jurisdiction ... and may enforce the fireworks law. If, however, the law is civil/regulatory, California may not impose its fireworks law on the Tribe."); *Barona Group of Capitan Grande Band of Mission Indians v. Duffy,* 694 F.2d 1185, 1188 (9th Cir.1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983). Doubts concerning the characterization of a law as civil/regulatory or criminal/prohibitory should be resolved in favor of the Indians "to protect Indian sovereignty." *Sycuan Band of Mission Indians v. Roache,* 788 F.Supp. 1498, 1502 (S.D.Cal. 1992), *aff'd* 38 F.3d 402 (9th Cir.1994), *as amended,* 54 F.3d 535 (9th Cir.1994). *See also Confederated Tribes,* 938 F.2d at 149; *Barona,* 694 F.2d at 1190.

### C. *The Civil/Regulatory v. Criminal/Prohibitory Test*

■ Whether a particular law is civil/regulatory or criminal/prohibitory depends on an examination of "the nature of the activity and the overall legal context governing the activity." *Sycuan Band of Mission Indians,* 788 F.Supp. at 1502. "[T]hat an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of Pub.L. 280." *Cabazon,* 480 U.S. at 211, 107 S.Ct. at 1089. The "shorthand test is whether the conduct at issue violates the State's public policy." *Id.* at 209, 107 S.Ct. at 1088. In other words, "if the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory [and thus not enforceable] on an Indian reservation." *Id.* at 209, 107 S.Ct. at 1088 (California's laws governing bingo and gambling codified in the Penal Code and imposing severe criminal penalties are civ-

il/regulatory rather than criminal/prohibitory because "California regulates rather than prohibits gambling in general and bingo in particular.").

### D. *Whether California Laws Governing Boxing are Civil/Regulatory or Criminal/Prohibitory*

◼ Two laws govern boxing in California: California Penal Code Section 412 and the Boxing Act.[2] The Tribe contends that the history, nature and context of these statutes establish that California's treatment of boxing has evolved from a general prohibition to a general allowance of boxing subject to regulation. Moreover, the Tribe argues, because California regards boxing as a sport and permits boxing at the amateur, college and recreational levels without state regulation, boxing does not offend California public policy. Therefore, according to the Tribe, California's boxing laws are civil/regulatory and thus inapplicable on Indian reservations.

The defendants argue that the basic activity at issue is fighting in general. Because, according to defendants, professional boxing is a small subset of fighting and it is the general intent of California law to prohibit fighting, California's boxing laws must be classified as criminal/prohibitory and enforced on Indian reservations. Moreover, defendants argue, because boxing often results in injury or death, it is properly aligned with violent crimes such as assault, battery, riots, brawls, and even manslaughter and murder—crimes strictly prohibited by the California Penal Code. Because of California's intention to prohibit fighting and the violent nature of boxing, the defendants argue, California boxing laws are criminal/prohibitory and fully applicable on Indian reservations, and notions of Indian sovereignty are subordinate to the state's interests.

#### 1. Statutory History of Boxing

The statutory history of boxing in California supports the Tribe's position that California law and public policy do not generally condemn the activity but rather permit boxing subject to regulation. Although boxing was originally prohibited in 1872, Penal Code Section 412 was amended on three occasions to permit non-professional sparring exhibitions conducted by athletic clubs, to reduce the crime of professional boxing to misdemeanor status and to decriminalize amateur and recreational boxing. Finally, the sport—including professional boxing—was decriminalized and the State Athletic Commission established by initiative in 1924. The criminal prohibitions in Penal Code Section 412 were replaced with the current regulations, and in 1941 the Boxing Act—containing a comprehensive regulatory scheme—was enacted. *See Hudson v. Craft*, 33 Cal.2d 654, 658–59, 204 P.2d 1, 4 (1949) ("[Boxing Act] comprehensively regulates boxing and prize fighting."). The history of boxing in California reflects an evolution of California law and public policy from a general prohibition of the sport in 1872 to today's general acceptance of professional, amateur and recreational boxing subject to regulation.

Moreover, California law permits several levels of boxing not subject to regulation by the Boxing Act. The Boxing Act does not apply to either of the following types of boxing contests: (1) contests "conducted under the supervision or control of an entity of the United States Government," Cal.Bus. & Prof.Code § 18655; and (2) contests "conducted by, or participated in exclusively by, any school, college, or university" or by any

---

2. The Boxing Act provides as follows:
 The [State Athletic] commission has the sole direction, management, control of, and jurisdiction over all professional and amateur boxing, professional and amateur kickboxing, full contact martial arts contests, and matches or exhibitions which are conducted, held, or given within this state. No such event shall take place without the prior approval of the commission ...
 Cal.Bus. & Prof.Code § 18640. The Boxing Act's regulatory scheme requires licensure of fight participants, handlers, managers, matchmakers, promoters and officials. Cal.Bus. & Prof.Code §§ 18648, 18665, 18654 repealed, 18673, 18667, 18673, 18702, and 18730–18732. The Boxing Act requires fighters to submit to medical examinations both before and after a fight. Cal.Bus. & Prof.Code §§ 18710–18711. Fight conduct is also regulated. Cal.Bus. & Prof.Code §§ 18705–18707. Boxing contests which do not conform to the Boxing Act are prohibited. Cal.Bus. & Prof.Code § 18878; Cal.Penal Code § 412.

association composed of the foregoing institutions in which each contestant is a student. Cal.Bus. & Prof.Code § 18656. Although the Boxing Act applies to amateur boxing contests, the State Athletic Commission authorizes nonprofit organizations to regulate amateur contests subject to the Commission's finding that the organizations' standards meet the safety and fairness standards of the State Athletic Commission. Cal.Bus. & Prof. Code § 18646. Therefore, it is clear that California's public policy does not flatly prohibit boxing but rather permits boxing subject, in some cases, to regulation: California regulates professional boxing, delegates the regulation of amateur boxing to nonprofit organizations, and ignores military, collegiate and recreational boxing.

### 2. Whether Professional Boxing is a Subset of Legal Sport or Illegal Fighting

The Tribe argues that because professional boxing is a smaller sub-category of boxing generally—an activity that is generally permitted subject to regulation—California's Boxing Act is regulatory in nature and thus not enforceable on Indian land. Defendants argue, on the other hand, that boxing is a small subset of a basic activity—fighting in general—that is prohibited, and thus laws regulating professional boxing are criminal/prohibitory and fully enforceable on reservations.

Defendants' contention that boxing is a sub-category of a basic activity—fighting—that California law prohibits and public policy disfavors is not convincing. First, boxing is recognized as a *sport* rather than a crime for various purposes. *See Mego v. United States*, 405 F.Supp. 1088, 1091–95 (U.S.Cust. Ct.1975) (boxing recognized as sport for purpose of assessing tariffs); *O'Connor v. Board of Education*, 449 U.S. 1301, 1308 n. 5, 101 S.Ct. 72, 76 n. 5, 66 L.Ed.2d 179 (1980) (boxing recognized as a sport for purposes of gender discrimination in education). *See also* 45 C.F.R. § 86.41(b) (boxing classified as a contact sport like football and basketball); *Kelley v. Board of Trustees*, 35 F.3d 265, 268 n. 1 (7th Cir.1994) (in gender discrimination case, court noted that 34 C.F.R. § 106.41(b) classified boxing as a contact

sport like football and basketball). California courts have also categorized professional boxing as a sport rather than a type of legalized fighting. *See, e.g., Lynch v. City and County of San Francisco*, 3 Cal.2d 141, 142–43, 43 P.2d 538 (1935) (staging of boxing matches and other sports exhibitions is not contrary to public welfare if carried out in accordance with statute). California law treats boxing as a sport permitting it at the professional, amateur, military, collegiate and recreational levels and subjecting only professional boxing to mandatory state regulation. Given the extent of boxing activity in California, it cannot be said that it is a criminal activity rather than a sport or that the public policy of the state favors the prohibition of boxing.

In *Cabazon*, the Supreme Court analyzed California's bingo laws and concluded that such laws were civil/regulatory and thus inapplicable on Indian reservations. The Court began by noting that "California does not prohibit all forms of gambling" and listed forms of regulated but permissible gambling including lottery, horse-betting and card clubs. 480 U.S. at 210, 107 S.Ct. at 1088. The Court concluded that because the state permitted a "substantial amount of gambling activity ... California regulate[d] rather than prohibit[ed] gambling in general and bingo in particular" and was thus precluded from applying a penal code section regulating bingo to the Indian Tribe. *Id.* at 211, 107 S.Ct. at 1089.

Similarly in this case, California permits a substantial amount of boxing activity. California exempts a substantial portion of boxing activity from its own regulations including contests conducted by the U.S. Government or colleges and universities. California makes no attempt to limit boxing for recreational or physical fitness purposes. Professional boxing (or prize fighting) is a small subset of boxing (which includes amateur, collegiate, military and recreational boxing), a larger permitted activity. Thus, California "regulates rather than prohibits" boxing in general and professional boxing in particular. Therefore, California is precluded from applying its civil/regulatory boxing laws to the Tribe. *See also Confederated*

*Tribes,* 938 F.2d at 149 (state speeding laws not criminal/prohibitory because while speeding is prohibited, speeding is a "small subset of a basic activity"—driving—that is generally permitted subject to regulation; speeding law therefore not enforceable on Indian reservation).

The Ninth Circuit's treatment of state fireworks laws and their application to Indian reservations in *United States v. Marcyes,* 557 F.2d 1361 (9th Cir.1977) (Washington state law) and *Quechan Indian Tribe v. McMullen,* 984 F.2d 304 (9th Cir.1993) (California state law) makes the distinction between civil/regulatory and criminal/prohibitory laws clear. In finding the Washington state fireworks law to be criminal/prohibitory, the court in *Marcyes* noted that the state's "intent [wa]s to prohibit the general possession and/or sale of dangerous fireworks" because the purpose of the statute was not to generate income by requiring licenses but rather to prohibit the general use of fireworks "in a legitimate effort to promote the safety and health of all citizens." *Marcyes,* 557 F.2d at 1364. Similarly, in *Quechan,* the court noted that the California fireworks law prohibiting the sale of all federally classified "Class C" fireworks except in the narrow situation where the fireworks were classified by the state fire marshall as "safe and sane" and were sold only during an eight day period reflected the state's intent to generally prohibit the sale of fireworks. *Quechan,* 984 F.2d at 307–08.

In both *Marcyes* and *Quechan,* the court found that the general activity in question—the sale and possession of fireworks—was contrary to public policy and that permitting the sale and possession of fireworks on reservations would circumvent the states' determination that the possession of fireworks is dangerous to the general welfare of its citizens. Unlike prize fighting is to boxing (or speeding is to driving generally), the possession and sale of fireworks is not a "small subset or facet of a larger permitted activity." *Confederated Tribes,* 938 F.2d at 149. Rather, the possession and sale of fireworks in California and Washington is a basic prohibited activity. The laws prohibiting the activity are thus deemed criminal/prohibitory and fully applicable on tribal lands. The same cannot be said for boxing. In this case, the basic activity at issue is boxing or legalized fighting. Professional boxing comprises but a small subset of a larger permitted activity. There is no evidence that California has determined, like the possession of fireworks, that boxing is dangerous to the general welfare of its citizens and that permitting boxing contests unregulated by the state on tribal lands would frustrate such a determination. For this reason, the Boxing Act is fundamentally different than the fireworks laws at issue in *Marcyes* and *Quechan.* Whereas the Boxing Act was intended to *permit* boxing and decriminalize an activity that had previously been prohibited, the fireworks laws criminalized the sale and possession of fireworks in furtherance of the states' public policy. California's boxing laws are civil/regulatory rather than criminal/prohibitory, and the state is without jurisdiction to enforce them on Indian reservations.

### E. *Whether the State's Interest Justifies Exertion of State Authority Absent Congressional Authorization*

■ Defendants contend that even absent a congressional grant, a state may exert jurisdiction over Tribal land if (1) the state's interest is compatible with federal and tribal interests as defined by federal law and (2) the state's interest is sufficient to justify exertion of its authority. The defendants rely on the Supreme Court's statement in *Cabazon* that Supreme Court case law "ha[s] not established an inflexible *per se* rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent." 480 U.S. at 214–15, 107 S.Ct. at 1091–92. However, in *Cabazon,* the Supreme Court was referring to cases in which it was held that even absent congressional authorization, states could require tribal smokeshops on Indian reservations to collect state sales tax from their non-Indian customers. Both cases involved nonmembers entering and purchasing tobacco products on the reservations involved. In those cases, the Court concluded that the state's interest in assuring the collection of sales taxes from non-Indians enjoying the off-reservation services of the state was sufficient to

warrant the minimal burden imposed on the tribal smokeshop operators. *Id.* at 215–16, 107 S.Ct. at 1091–92.

In *Cabazon*, however, in considering whether to apply California's gambling laws to high-stakes bingo on the reservation, the Court concluded that "state jurisdiction [was] preempted" because it interfered with traditional notions of Indian sovereignty and the congressional goal of Indian self-government, including the "overriding" goal of encouraging tribal self-sufficiency and economic development. *Id.* at 216, 107 S.Ct. at 1092. The state's interest in the tobacco tax cases—collecting sales tax on tobacco products sold to non-tribe members on Indian land who enjoyed the off-reservation benefits of the state—was different from the state's interest in regulating reservation bingo. The Court deemed the state's interest—preventing the infiltration of the tribal games by organized crime—insufficient to justify the imposition of its gambling laws on the tribes in light of the compelling federal and tribal interests in supporting the Indian bingo enterprise. *Id.* at 220–21, 107 S.Ct. at 1094–95.

Similarly in this case, general federal policy encourages tribes to revitalize self-government and assume economic self-sufficiency. Prize fights on the Tribe's reservation will clearly generate revenue and create jobs. While the state's interests—preventing the injury of professional boxers and preventing the infiltration of reservation boxing contests by organized crime—are important, the Tribal Athletic Commission's regulations provide adequate safeguards against such contingencies. Therefore, the state's interests are not as compelling as they might be if boxing contests on the Tribe's reservation were left entirely unregulated. As in *Cabazon*, the state's interests here do not justify the imposition of state civil/regulatory laws absent an express congressional grant of authority.

## IV. CONCLUSION

In California, professional boxing is not a subset of an activity generally prohibited by the state and is not contrary to public policy. Rather, professional boxing is a subset or facet of the sport of boxing, an activity which California generally permits subject to regulation at some levels. Therefore, California's boxing laws are civil/regulatory and not applicable to boxing contests staged on Indian reservations. The state is without jurisdiction to regulate or require the licensing of boxing contests or their promoters or participants when such contests are conducted on tribal lands and also without authority to fine or suspend any California licensee who participates in such boxing events. The Tribe's motion for summary judgment is granted, and the defendants' cross-motion for summary judgment is denied.