CONFEDERATED TRIBES OF the
COLVILLE RESERVATION;
Lawrence Fry, Plaintiffs–Appellants,

v.

STATE OF WASHINGTON; Washington
State Patrol; George B. Tellivek,
Defendants–Appellees.

No. 89–35025.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1990.

Decided July 5, 1991.

Michael Taylor, Colville Confederated Tribes, Nespelem, Wash., for plaintiffs-appellants.

Edward Mackie and Timothy R. Malone, Asst. Attys. Gen., Olympia, Wash., for defendants-appellees.

Before KOELSCH, BROWNING and BEEZER, Circuit Judges.

KOELSCH, Circuit Judge:

This appeal involves a dispute between the Confederated (Indian) Tribes of the Colville Reservation together with Lawrence Fry, an enrolled member (the Tribes), and the State of Washington with respect to one of the latter's motor vehicle traffic laws.

The issue is one of law: does the State of Washington possess jurisdiction over on-reservation Indians to enforce its statute prescribing speed limits for motor vehicles operated upon public roads within, and thus a part of, the reservation?

The District Court concluded that the answer is "yes". We disagree.

The facts are undisputed: on May 21, 1988, Lawrence Fry, an enrolled member of the Tribe, while operating his motor vehicle on Highway 97 within the Reservation was stopped by a Washington State Patrol officer for exceeding the Washington State speed limit. The officer was not commissioned by the Tribe to enforce tribal traffic laws; because Washington treats speeding as a civil, not a criminal, offense, the officer gave Fry a civil complaint pursuant to RCW Ch. 46.63.

However, Fry did not pay the prescribed fine nor contest the complaint in state court; instead he and the Tribes commenced this action in the Federal District Court seeking to prohibit the State from

enforcing its asserted traffic violation and to secure a judicial declaration that the matter is governed by tribal law and enforceable only by officers duly commissioned by the Tribes and in the Tribes' own court.

Historically, the power to legislate in both criminal and civil matters concerning Indians and their acts and conduct upon their reservations lay exclusively with the Congress and the tribes themselves. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 214, 107 S.Ct. 1083, 1090, 94 L.Ed.2d 244 (1987). However, in 1953 Congress enacted Public Law 280, which delegated to the states power to impose state laws, both civil and criminal, within the reservations. Public Law 83–280, 67 Stat. 588.[1] Because Congress' "primary concern", *Bryan v. Itasca County*, 426 U.S. 373, 379, 96 S.Ct. 2102, 2106, 48 L.Ed.2d 710 (1976), lay in the lawlessness on some reservations and the absence of tribal institutions for law enforcement, it delegated to the States broad powers over criminal matters. Thus, section 2, 18 U.S.C. § 1162 reads as follows:

§ 1162. State jurisdiction over offenses committed by or against Indians in the Indian country

(a) ... [t]he States ... shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country ... to the same extent that such State has jurisdiction over offenses committed elsewhere within the State, and the criminal laws of such State shall have the same force and effect within such Indian country as they have elsewhere within the State....

Pub.L. 83–280, § 2, 18 U.S.C. § 1162.

In marked contrast, the scope of the provision relating to civil matters is very limited. It provides:

§ 1360. State civil jurisdiction in actions to which Indians are parties

(a) ... [T]he States ... shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country ... to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State....

Pub.L. 83–280, § 4, 28 U.S.C. § 1360.

Moreover, as the Court in *Bryan* noted, it was not the Congress' intention to extend to the States the "full panoply of civil regulatory powers," 426 U.S. at 388, 96 S.Ct. at 2110, but essentially to afford Indians a forum to settle private disputes among themselves.

Both the Tribes and the State agree the dispute in this instance is not within the purview of section 4. Rather, the issue is whether or not the Washington law relating to speeding should be classified either as criminal/prohibitory or civil/regulatory. *Barona Group of Capitan Grande Band of Mission Indians, San Diego County, Cal. v. Duffy*, 694 F.2d 1185, 1188 (9th Cir.1982). If the former, then Washington possesses jurisdiction and its law can be enforced, but if the latter then such power is lacking. Laws which prohibit absolutely certain acts fall into the first category, while those generally permitting certain conduct but subject to regulation are within the second. "The shorthand test is whether the conduct at issue violates the State's public policy." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 209, 107 S.Ct. 1083, 1088, 94 L.Ed.2d 244 (1987).

---

1. In 1963, Washington assumed criminal and civil jurisdiction for acts committed by Indians on Indian lands in eight specific subject areas, including the operation of motor vehicles on public roads. RCW 37.12.010. To assume jurisdiction beyond these eight areas, Washington needed either an express grant from Congress or tribal consent. A subsequent statute, the Indian Civil Rights Act, 82 Stat. 78, 25 U.S.C. §§ 1321–1326, imposed a more stringent tribal consent requirement for a state to assume jurisdiction over Indians on Indian land, but the change did not affect any cession of jurisdiction already made. 25 U.S.C. § 1323(b); 25 U.S.C. §§ 1321(a), 1322(a).

**148**

## I.

■ Turning now to the issue under consideration, it appears that in 1979 the state legislature amended Washington's traffic offense statutes to "decriminalize" several traffic offenses, including speeding, and designated each as a "traffic infraction": "a traffic infraction may not be classified as a criminal offense." RCW 46.63.020. Although this language is clear and unequivocal, in an inquiry such as this we must examine more than the label itself to determine the intent of the State and the nature of the statute, *Cabazon*, 480 U.S. at 221 n. 10, 107 S.Ct. at 1094 n. 10, keeping in mind that "the policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history." *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 168, 93 S.Ct. 1257, 1260, 36 L.Ed.2d 129 (1973), quoting *Rice v. Olson*, 324 U.S. 786, 789, 65 S.Ct. 989, 991, 89 L.Ed. 1367 (1945). Thus, Indian tribal sovereignty provides the "backdrop against which the applicable ... federal [and state] statutes must be read." *McClanahan*, 411 U.S. at 172, 93 S.Ct. at 1262.

The Washington legislature in amending its traffic statutes carefully distinguished those offenses like speeding, which henceforth are subject to only civil penalties, from a long list of offenses like reckless driving or driving while intoxicated, which remain criminal. Speeding is now punishable by a set fine rather than a jail term; the monetary penalty imposed for violation may not exceed $250; the penalty must be paid by its due date, else the offender's driver's license is not renewed until the fine and a late fee is received; and should the driver contest the complaint he is not allowed a jury trial. RCW 46.63.020, 090, 110.

By decriminalizing these offenses, the legislature aimed to "promote the public safety and welfare on public highways and to facilitate the implementation of a uniform and expeditious system for the disposition of traffic infractions." The Washington state courts have found a traffic infraction not to be a felony or misdemeanor. *See, e.g., City of Wenatchee v. Dur-*

*ham*, 43 Wash.App. 547, 551 n. 3, 718 P.2d 819, 822 n. 3 (1986). And the Washington Attorney General has opined that traffic infractions are "no longer a criminal offense", 4 Op. Att'y Gen. 2 (1981).

Thus, the state's avowed public policy is served by treating speeding as a civil/regulatory offense. Indeed, to treat it otherwise would allow Washington to have it both ways. We conclude the state may not declare certain infractions as civil, remove the panoply of constitutional and procedural protections associated with criminal offenses, save itself the time and expense of criminal trials, and then insist the same infraction is criminal for purposes of expanding state jurisdiction and appropriating the revenue raised through enforcement of the speeding laws. *See Mayers v. United States Dept. of Health and Human Services*, 806 F.2d 995, 998 (11th Cir. 1986) (if statute criminal in nature, procedure employed constitutionally inadequate).

## II.

Several cases applying the civil/regulatory versus criminal/prohibitory test support this conclusion. In *Cabazon*, the Court held a California law establishing misdemeanor criminal penalties for operating bingo games except in accord with specific regulations was civil/regulatory and therefore unenforceable on an Indian reservation. *Cabazon*, 480 U.S. at 211, 107 S.Ct. at 1089. The Court concluded "in light of the fact that California permits a substantial amount of gambling activity, including bingo, and actually promotes gambling through its state lottery, we must conclude that California regulates rather than prohibits gambling in general and bingo in particular." *Id.* The Court rejected California's argument that high stakes, unregulated bingo was prohibited and a misdemeanor, and therefore against public policy. As it said: "[b]ut that an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of P.L. 280." *Id.*

■ Thus, although the government is correct that *speeding* remains against the

state's public policy, *Cabazon* teaches that this is the wrong inquiry. *Cabazon* focuses on whether the prohibited activity is a small subset or facet of a larger, permitted activity—high-stakes unregulated bingo compared to all bingo games—or whether all but a small subset of a basic activity is prohibited. Thus, in *United States v. Marcyes*, 557 F.2d 1361, 1364 (9th Cir.1977) we found Washington's fireworks statute to be criminal/prohibitory because, with very limited exceptions, Washington prohibited all private possession and sale of fireworks. To allow tribal members to operate fireworks stands on reservations would "entirely circumvent Washington's determination that the possession of fireworks is dangerous," *Marcyes*, 557 F.2d at 1364. But to look to the Tribes rather than the state for traffic enforcement on the reservation will not detract from Washington's determination to discourage speeding.[2]

We conclude that unregulated, high-stakes bingo was an extreme extension of a permitted activity, it was incident to that general activity and thus lay within the ambit of that activity. Similarly, here speeding is but an extension of driving—the permitted activity—which occasionally is incident to the operation of a motor vehicle.

Concern for protecting Indian sovereignty from state interference prompted courts to develop the criminal/prohibitory—civil regulatory test. *United States v. Dakota*, 796 F.2d 186, 188 (6th Cir.1986). That concern leads us to resolve any doubts about the statute's purpose in favor of the Indians. *See Bryan*, 426 U.S. at 392, 96 S.Ct. at 2112. Indian sovereignty and the state's interest in discouraging speeding are both served by our decision here: the Tribes have enacted a traffic code, employ trained police officers, and maintain tribal courts staffed by qualified personnel to deal with criminal traffic violations. The Tribes are willing and able to enforce their own traffic

laws against speeding drivers and even to commission Washington state patrol officers to assist them. We conclude RCW Ch. 46.63 should be characterized as a civil, regulatory law.[3] Under it, the state may not assert jurisdiction over tribal members on the Colville reservation.

REVERSED with directions to the District Court to grant Appellants the relief sought.

---

**2.** Thus, we reject the state's argument that uniformity in highway safety laws requires state jurisdiction, at least where the Tribes have shown their own highway safety laws and institutions are adequate for self-government. *Cf. County of Vila v. Chapman*, 122 Wis.2d 211, 361

N.W.2d 699 (1985) (tribe had no tradition of self-government in the area of traffic regulation).

**3.** Our disposition makes it unnecessary for us to address the Tribes' other arguments on appeal.