**Amelia Darlene BRAY, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C8-96-357.

Court of Appeals of Minnesota.

Nov. 5, 1996.

Peter W. Cannon, Cannon, Kunz & Fischer, Mahnomen, for Petitioner, Appellant.

Hubert H. Humphrey, III, Attorney General, Peter R. Marker, Asst. Attorney General, St. Paul, for Respondent.

Considered and decided by HUSPENI, P.J., and AMUNDSON and THOREEN,* JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

HUSPENI, Judge.

Appellant, a member of the White Earth Band of the Minnesota Chippewa tribe, challenges the district court's order sustaining the revocation of her driver's license on the ground that Minnesota lacks jurisdiction over the conduct of tribal members on the reservation. Because we hold that Minnesota has jurisdiction to revoke the driver's license of a tribal member found driving on a reservation with an alcohol concentration above 0.10 pursuant to the implied consent law, we affirm.

## FACTS

Appellant Amelia Bray, a member of the White Earth Band of the Minnesota Chippewa tribe, holds a Minnesota driver's license. She was stopped while driving on a Mahnomen county road within the boundaries of the White Earth Indian Reservation. Appellant was read the implied consent advisory, indicated that she did not want to consult an attorney, and agreed to a breath test. The test showed an alcohol concentration of 0.17. Appellant's license was revoked pursuant to the implied consent law.

Appellant petitioned for judicial review of the revocation, alleging inter alia that the State of Minnesota lacks subject matter, personal, and regulatory jurisdiction over members of Indian tribes on Indian reservations. The district court found against her on all allegations and sustained the revocation. She appeals from that order, challenging only the jurisdictional issue.

## ISSUE

Does the State of Minnesota have authority to revoke the Minnesota driver's license of a tribal member on a reservation pursuant to the implied consent law?

## ANALYSIS

■ Where the material facts are not in dispute, a reviewing court need not defer to the trial court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). We therefore review de novo.

■ Minnesota acquired jurisdiction over Indians through Public Law 280.

It authorizes state court assumption of jurisdiction over civil causes of action in Minnesota to which Indians are parties. Civil laws that are of "general application to private persons or private property" have full force and effect in Indian country. 28 U.S.C.A. § 1360(a) (Supp.1989).

*Becker County Welfare Dep't v. Bellcourt,* 453 N.W.2d 543, 544 (Minn.App.1990), *review denied* (Minn. May 23, 1990). Appellant argues that because Pub.L. 280 grants states a general right to enforce criminal/prohibitory statutes but only limited rights to enforce civil/regulatory statutes, and because the statutes pertaining to driving while intoxicated are merely regulating, not prohibiting, driving, Pub.L. 280 does not confer jurisdiction. Appellant cites *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) to support her view.

*Cabazon Band* held that Pub.L. 280 did not give California the right to enforce its bingo statutes on the reservation.

[I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy. * * *

In light of the fact that California permits a substantial amount of gambling activity, including bingo, and actually promotes gambling through its state lottery, we must conclude that California regulates rather than prohibits gambling in general and bingo in particular. * * *

Accordingly, we conclude that Pub.L. 280 does not authorize California to enforce [its statute regulating bingo] within the Cabazon and Morongo Reservations.

    *      *      *      *      *      *

Our cases, however, have not established an inflexible per se rule precluding state jurisdiction over tribes and tribal members

in the absence of express congressional consent. * * * [I]n exceptional circumstances a State may assert jurisdiction over the on-reservation activities of tribal members.

480 U.S. at 209, 211–12, 214–15, 107 S.Ct. at 1088–89, 1091 (citations and quotations omitted). After discussing the strong federal and tribal interest in bingo games as a means of enabling the tribe to attain self-sufficiency and economic development, the Supreme Court concluded:

that the State's interest in preventing the infiltration of the tribal bingo enterprises by organized crime does not justify state regulation of the tribal bingo enterprises in light of the compelling federal and tribal interests supporting them.

*Id.* at 221–22, 107 S.Ct. at 1094–95.

■ Appellant's analogy of California statutes relating to bingo to Minnesota statutes relating to driving while intoxicated is unpersuasive for several reasons. First, the conduct for which appellant's license was revoked was not driving per se but failing an alcohol concentration test administered pursuant to the implied consent law shortly after she had been driving. *See* Minn.Stat. § 169.123, subd. 4 (1994). Minnesota does not seek merely to regulate driving while intoxicated: it categorically prohibits such driving. Second, there is no federal or tribal interest to be advanced by permitting tribal members to drive on reservations while intoxicated, nor is such an interest defeated by permitting the state to revoke the licenses of tribal members who fail the alcohol concentration test. Third, Minnesota's unequivocal policy of keeping intoxicated drivers off the road when coupled with the *Cabazon Band* "shorthand test" brings the implied consent statute clearly under Pub.L. 280. *Cabazon Band* does not support denying the state the right to prohibit intoxicated persons from driving, even when those intoxicated persons are tribal members driving on a reservation. *See also State v. LaRose,* 543 N.W.2d 426, 427–28 (Minn.App.1996) (applying *Cabazon Band* and holding that state had jurisdiction over a trespass against a tribal member for an offense occurring on a reservation because the law was not regulating real property

ownership and occupancy but prohibiting the entry or occupancy of another's property).

■ We are equally unpersuaded by appellant's citation of *State v. Hanson,* 543 N.W.2d 84 (Minn.1996), to argue that because revocation is a civil, not a criminal, penalty it is not covered by Pub.L. 280. *Hanson* holds that the double jeopardy protection against multiple punishments for the same offense does not preclude following the civil penalty of license revocation by criminal prosecution for the same conduct which led to the revocation. *Id.* at 84. The focus in a double jeopardy analysis is on the sanctions and their purposes, whether remedial, deterrent, or retributive. *See generally id.* at 87–88. The focus in a Pub.L. 280 analysis is not on the sanctions but on whether the conduct is regulated or prohibited; therefore, appellant's citation of *Hanson* is inapposite.

■ Moreover, neither the federal government nor the White Earth Indian tribe has chosen to regulate the administration of alcohol concentration tests to tribal members driving on the reservation. "[T]he legislative history of Pub.L. 280 indicates that the statute was intended to redress the lack of adequate Indian forums." *Becker,* 453 N.W.2d at 544 (citing *Bryan v. Itasca County, Minnesota,* 426 U.S. 373, 383, 96 S.Ct. 2102, 2108, 48 L.Ed.2d 710 (1976)). There is no forum other than the state court to address this issue; there is neither a tradition of tribal sovereignty in the area nor a federal law pre-empting the state law. Therefore, the state law may be enforced. *See, e.g., Rice v. Rehner,* 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983) (holding that because there was no tradition of tribal sovereignty in the area of liquor licensing and application of the state liquor licensing laws did not impair a right granted or reserved by federal law, the state could require a tribal member selling liquor on the reservation to obtain a license); *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (holding that because tribe had federally approved ordinances regulating hunting and fishing by non-tribal members on a reservation, state laws on hunting and fishing were preempted). Here, there is no history of tribal sovereignty in

the administration of alcohol concentration tests, and no federal right is violated by applying the state's implied consent statute. The state law is enforceable.

### DECISION

Because the implied consent law clearly accords with the state's policy of keeping intoxicated drivers off its roads, because no federal or tribal interest is served by failing to enforce the implied consent law on a reservation, and because neither federal law nor traditional tribal sovereignty conflicts with the implied consent law, we hold that Minnesota has jurisdiction to enforce the implied consent law on tribal members driving on a reservation.

**Affirmed.**