**STATE of Minnesota, Plaintiff,**

v.

**Ida Mae JACKSON, Defendant.**

**No. C8–96–1668.**

Court of Appeals of Minnesota.

Jan. 21, 1997.

Review Granted March 18, 1997.

---

Hubert H. Humphrey, III, Attorney General, St. Paul, for Plaintiff.

John J. Muhar, Itasca County Attorney, W. James Mason, Assistant County Attorney, Grand Rapids, for Plaintiff.

Amber J. Ahola, Anishinabe Legal Services, Cass Lake, for Defendant.

Considered and decided by HUSPENI, P.J., and NORTON and FORSBERG,* JJ.

## OPINION

HUSPENI, Judge.

Defendant, a member of the Leech Lake Band of the Minnesota Chippewa tribe, was cited by the Itasca County Sheriff's Department for failure to provide proof of insurance in violation of Minn.Stat. § 169.791 while driving within the boundaries of the Leech Lake Ojibwe Reservation. Because the Leech Lake Band has a vehicle registration ordinance and proof of insurance requirement, defendant filed a motion to dismiss the charges on the ground that Minnesota lacks jurisdiction to enforce the traffic citation. Determining that Minn.Stat. § 169.791 was civil/regulatory rather than criminal/prohibitory, the district court concluded that Minnesota lacked jurisdiction to enforce the traffic citation against a tribal member on the reservation. The district court granted defendant's motion to dismiss and certified the question of law to this court. Because defen-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

dant is licensed and registered to drive in Minnesota and is not subject to the tribal ordinance, we answer the certified question in the negative and reverse.

## FACTS

Defendant Ida Mae Jackson, a member of the Leech Lake Band of the Minnesota Chippewa tribe, holds a Minnesota driver's license. On February 22, 1996, defendant was involved in a traffic accident in Ball Club, Minnesota. Ball Club is located in Itasca County within the boundaries of the Leech Lake Ojibwe Reservation. At the time of the accident, defendant was driving a vehicle with Minnesota registration and license plates, and her mailing address was in Cohasset, Minnesota, beyond the reservation boundaries.

At the scene of the accident, defendant was cited by the Itasca County Sheriff's Department for failure to provide proof of insurance in violation of Minn.Stat. § 169.791. The Leech Lake Band of Chippewa also has a vehicle ordinance requiring proof of insurance for registered residents of the Leech Lake Ojibwe Reservation.

Defendant filed a motion to dismiss the charges based on lack of subject matter jurisdiction, arguing that the state could not enforce a traffic citation against Indians on a reservation. The trial court granted the motion and found the question of law so important and/or doubtful as to require certification to the court of appeals pursuant to Minn. R.Crim.P. 28.03.

## ISSUE

Does the State of Minnesota have authority to enforce Minn.Stat. § 169.791, requiring proof of insurance, on a tribal member who is not subject to a tribe's similar ordinance?

## ANALYSIS

■ The facts are not in dispute. Where the material facts are not in dispute, a reviewing court need not defer to the trial court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). We therefore review de novo.

The state contends that 18 U.S.C. § 1162 (Pub.L.280) confers jurisdiction on the State of Minnesota to enforce against a Native American driving a motor vehicle in Indian Country the Minnesota statute requiring a driver to produce proof of insurance. The Supreme Court has held that Pub.L. 280 grants states a general right to enforce criminal/prohibitory statutes, but only limited rights to enforce regulatory statutes.

> [I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The short-hand test is whether the conduct at issue violates the State's public policy.
>
> * * * *
>
> In light of the fact that California permits a substantial amount of gambling activity, including bingo, and actually promotes gambling through its state lottery, we must conclude that California regulates rather than prohibits gambling in general and bingo in particular.

*California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 209, 211, 107 S.Ct. 1083, 1088–89, 94 L.Ed.2d 244 (1987) (citations omitted).

*Cabazon Band* went on to note that there is no "inflexible per se rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent." *Id.* at 214–15, 107 S.Ct. at 1091. After discussing the strong federal and tribal interest in the bingo games as a means of enabling the tribe to attain self-sufficiency and economic development, the Supreme Court concluded

> that the State's interest in preventing the infiltration of the tribal bingo enterprises by organized crime does not justify state regulation of the tribal bingo enterprises in light of the compelling federal and tribal interests supporting them.

*Id.* at 221–22, 107 S.Ct. at 1094–95.

Recently, this court concluded that failure to provide insurance upon demand of a police officer is a civil/regulatory matter and that the state lacks jurisdiction to enforce the proof of insurance statute on tribal members

who are subject to tribal regulations. *State v. Stone*, 557 N.W.2d 588 (Minn.App.1996). While *Stone* was filed after briefing and oral argument in this case, we expect that defendant would cite *Stone* as controlling authority in support of her position. Because *Stone* is a published opinion of this court, we would follow its rationale if we were unable to distinguish that case from the one now before us. The two cases are, however, factually distinguishable.

The Leech Lake Band of Chippewa has a motor vehicle code, Ordinance 93–01, and a reciprocity agreement with the state. Under the Band's ordinance a resident vehicle owner registers the vehicle with the reservation and is issued a license plate. Upon registration, the resident owner of a vehicle must provide proof of insurance to the tribe's motor vehicle clerk as required by Minn.Stat. § 65B, sections 41 through 47. The code authorizes conservation officers and other duly recognized law enforcement officers of the Leech Lake Band of Chippewa to enforce the provisions of the ordinance against its residents. However, the ordinance also provides that "[a]ny vehicle which is registered in another jurisdiction is exempt from the motor vehicle code of the Leech Lake Band of Chippewa * * *."

There was no discussion in *Stone* of where the vehicles were registered or where the drivers resided. We assume, therefore, that the parties in *Stone* accepted the applicability of Ordinance 93–01.

Defendant is a licensed Minnesota driver and was driving a vehicle registered and licensed in Minnesota. Her mailing address was in Cohasset, Minnesota. Therefore, defendant was not a resident of the reservation subject to the tribe's ordinance. While the tribe may lack jurisdiction to enforce its motor vehicle code against defendant, the State of Minnesota does not. Because defendant is licensed to drive in Minnesota and because the vehicle was registered and licensed pursuant to the laws of Minnesota, the state, not the reservation, has jurisdiction to enforce the proof of insurance statute.

While this case is distinguishable from *Stone*, we are concerned by the dilemma apparently created by *Cabazon Band* in an attempt to distinguish civil/regulatory from criminal/prohibitory regulations in order to determine jurisdiction.

In *Cabazon Band*, the gambling regulation at issue sought to control a tribe's method of generating income and establishing self-sufficiency. The thread of economic development and well-being ran strongly and consistently throughout that opinion. *See also St. Germaine v. Circuit Court for Vilas County*, 938 F.2d 75, 77 (7th Cir.1991) (distinguishing *Cabazon Band* on the grounds that it concerned tribal self-government, tribal self-sufficiency and economic development), *cert. denied* 503 U.S. 997, 112 S.Ct. 1704, 118 L.Ed.2d 412 (1992). Generally, driving regulations have nothing to do with tribal economic development.

Where there is neither a federal law preempting the state law, nor a tradition of tribal sovereignty in the area, a state law may be enforced. *See, e.g., Rice v. Rehner*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983) (holding that because there was no tradition of tribal sovereignty in the area of liquor licensing, and because application of the state liquor licensing laws did not impair a right granted or reserved by federal law, the state could require a tribal member selling liquor on the reservation to obtain a license); *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (holding that because the tribe had federally approved ordinances regulating hunting and fishing by non-tribal members on a reservation, state laws on hunting and fishing were preempted). Here, there is no federal or tribal interest which would be advanced by permitting Indians to drive without proof of insurance, without seatbelts, without child restraint seats, etc.[1]

Perhaps most important in discerning just how broadly the *Cabazon Band* holding is intended to sweep, the United States Supreme Court set out a "shorthand test" in that case to determine if a law is crimi-

---

1. We note that the tribe has motor vehicle regulations; however, we do not believe that these regulations establish a history of tribal sovereignty; rather, these regulations simply demonstrate that the tribe has a similar interest in protecting its residents.

nal/prohibitory. "The shorthand test is whether the conduct at issue violates the State's public policy." *Cabazon Band,* 480 U.S. at 209, 107 S.Ct. at 1088. *Cabazon Band's* shorthand test was also analyzed in *St. Germaine,* where the court determined that Wisconsin had jurisdiction to enforce the conviction of a tribal member driving on the reservation for driving after revocation. 938 F.2d at 77.

> The imposition of a criminal penalty is not the sole test as *Cabazon* makes clear— simply because a statute is enforceable by criminal as well as civil means is not enough to convert a state statute from a regulation into a criminal law within the meaning of Pub.L. 280. The shorthand test the Court prescribes is based on a determination of whether the conduct at issue violates the state's public policy. The State of Wisconsin seeks to protect the lives and property of highway users from all incompetent, incapacitated, and dangerous drivers anywhere on its highways on a reservation or off. A clear and mandatory criminal penalty is imposed to enforce its prohibition. This is public policy enforcement of high order. The state's public policy in enforcing this criminal penalty and deterring dangerous drivers does no violence to any tribal vehicle regulation which the tribe enforces.
>
> * * * *
>
> The tribal Indians as well as the general public are all better served by uniform enforcement of the Wisconsin driver's license law.

*Id.* at 77–78 (citations omitted).

■ Minnesota's policy in requiring insurance is to provide reparation for injury and property damage where an injury is sustained as a result of the use or operation of a vehicle, thereby protecting citizens and property by requiring those who drive on Minnesota roads to have insurance and to prohibit those without insurance from driving. *See* Minn.Stat. §§ 65B.42, 65B.48, subd. 1 (1994). Under the "shorthand test" enumerated in *Cabazon Band,* the state's strong interest in protecting its persons and property appears to indicate that driving laws are prohibitory rather than regulatory. *See also Bray v. Commissioner of Pub. Safety,* 555 N.W.2d 757 (Minn.App.1996) (applying *Cabazon*

*Band* and holding that state had jurisdiction over a tribal member driving under the influence of alcohol while on a reservation because of the state's strong interest in preventing those under the influence of alcohol from driving on its roads).

Finally, even when this court applies the *Cabazon Band* criminal/prohibitory-civil/regulatory test, we are left with the question of what is regulated and what is prohibited. It seems that a compelling argument can be made that the State of Minnesota does not **regulate** speeding, reckless driving, going through stop signs, drunken driving, driving a car without up-to-date license tabs, driving without insurance, etc.; rather it **prohibits** those activities. The state regulates **legal** conduct (driving) and prohibits illegal conduct (those actions that violate motor vehicle statutes). For example, the state regulates speed by stating that on a certain road one may drive up to 55 miles per hour: the state does not regulate speeds over 55 miles per hour; it prohibits them. We are concerned that the judiciary sometimes strains to find an interpretation of the law that endangers people, whether on or off a reservation. We believe that all people driving in Minnesota have the right to expect safety from uniform criminal driving laws whether they are residents of the state or not.

## DECISION

Because defendant is licensed and registered to drive in Minnesota, and because she is not exempted under a claim of tribal sovereignty, the state has jurisdiction to enforce its proof of insurance requirements against her.

**Certified question answered in the negative and reversed.**