STATE of Minnesota, Appellant,

v.

Joshua Carl STONE (C9–96–1291), Cheryl Florine Graff (C0–96–1292), Kenneth Morgan Coleman, Jr. (C2–96–1293), Charles William Zornes (C4–96–1294), Simon Dean Zornes (C6–96–1295), Margaret Mary Myhre (C8–96–1296), Voncille Marie Alvarado (CX–96–1297), Wendy Sue Littlewolf (C1–96–1298), Jamie Lynn Sargent (C3–96–1299), Respondents.

Nos. C9–96–1291 thru C3–96–1299.

Court of Appeals of Minnesota.

Dec. 17, 1996.

Review Granted March 18, 1997.

---

Hubert H. Humphrey III, Attorney General, St. Paul, for Appellant.

Eric O. Boe, Mahnomen County Attorney, John I. Allen, Assistant County Attorney, Mahnomen, for Appellant.

Peter W. Cannon, Mahnomen, for Respondents Graff, Coleman, Charles Zornes, Simon Zornes, Myhre and Alvarado.

Regina A. Larson, Hellerud & Larson, Ada, for Respondent Littlewolf.

Zenas Baer, Zenas Baer & Associates, Hawley, for Respondent Sargent.

Considered and decided by SCHUMACHER, P.J., TOUSSAINT, C.J., and THOREEN, J.*

## OPINION

SCHUMACHER, Judge.

In this consolidated case, the State of Minnesota appeals the district court's dismissal of charges involving traffic violations against nine respondents, who are enrolled members of the Minnesota Chippewa Tribe, White Earth Band. We affirm.

## FACTS

Respondents were charged with violating various state traffic laws within the boundaries of the White Earth Indian Reservation. The violations were: (1) failure to provide motor vehicle insurance and no proof of insurance (Minn.Stat. §§ 169.791, 169.797 (1996)); (2) driving with an expired registration (Minn.Stat. § 168.09 (1996)); (3) driving without a license (Minn.Stat. § 171.02

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

(1996)); (4) driving with an expired driver's license (Minn.Stat. § 171.27 (1996)); (5) driving after license revocation (Minn.Stat. § 171.24 (1996)); (6) speeding (Minn.Stat. § 169.141 (1996)); (7) driving with no seatbelt (Minn.Stat. § 169.686 (1996)); and (8) failure to have a child restraint seat (Minn. Stat. § 169.685, subd. 5 (1996)).

A reciprocity agreement between the state and the White Earth Band extends full reciprocity "by both jurisdictions to all automobiles * * * that are properly registered in their jurisdictions." The agreement defines "reciprocity" as "[e]xemption from registration and from payments of taxes or fees levied against an owner or operator by reason of the operation of vehicles."

Section 34 of White Earth Band's Ordinance No. 87–001 provides:

> All applicants for motor vehicle licenses issued pursuant to this ordinance shall provide the information required by the Clerk of Court on a form to be supplied by the Clerk of Court to show the applicant has the liability insurance required by [Minn. Stat. § 65B.41–.71].

All of the respondents entered into factual stipulations indicating that they had violated the various Minnesota traffic laws within the boundaries of the reservation. The parties submitted the stipulations to the district court with the understanding that the court would either dismiss the charges for lack of jurisdiction or make a finding of guilty or not guilty.

The district court first determined that although the parties' stipulated facts did not specifically refer to ordinance 87–001, the court assumed that the ordinance was intended to be part of the record because it was submitted along with the reciprocity agreement. The district court then dismissed all of the charges against the respondents except those for driving after license revocation. Three of the respondents were found guilty of driving after license revocation, but the other charges against them were dismissed. This appeal only involves the dismissed charges, not the charges of driving after license revocation.

## ISSUE

Does the state have jurisdiction over these traffic-related offenses committed by enrolled members of the White Earth Band within the boundaries of the White Earth Reservation?

## ANALYSIS

This court is not bound by and need not give deference to a district court's legal conclusions. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). This court reviews jurisdictional questions de novo. *Becker County Welfare Dep't v. Bellcourt*, 453 N.W.2d 543, 544 (Minn.App.1990), *review denied* (Minn. May 23, 1990).

The Supreme Court has recognized that although Indian tribes retain attributes of sovereignty, state laws may be applied to tribal Indians on their reservations if Congress grants a state the authority to do so. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987). In 1953, Congress enacted Public Law 280 (codified as amended at 18 U.S.C. § 1162 (1994), 25 U.S.C. §§ 1321–1324 (1994), 28 U.S.C. § 1360 (1994)), which gives certain states broad criminal jurisdiction within some Indian reservations. Public Law 280 was adopted to confront "the problem of lawlessness on certain Indian reservations, and the absence of adequate trial institutions for law enforcement." *Bryan v. Itasca County*, 426 U.S. 373, 379, 96 S.Ct. 2102, 2106, 48 L.Ed.2d 710 (1976). It provides:

**State jurisdiction over offenses committed by or against Indians in the Indian country**

(a) Each of the states * * * listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed * * * to the same extent that such State * * * has jurisdiction over offenses committed elsewhere within the State * * *, and the criminal laws of such State * * * shall have the same force and effect within such Indian country as they have elsewhere within the State * * *:

* * * *

Minnesota * * * All Indian country within the State, except the Red Lake Reservation.

18 U.S.C. § 1162(a). Public Law 280's grant of civil jurisdiction is more limited, and the Supreme Court has interpreted it

to grant States jurisdiction over private civil litigation involving the reservation Indians in state court, but not to grant general civil regulatory authority.

*Cabazon,* 480 U.S. at 208, 107 S.Ct. at 1087. In *Cabazon,* Indian tribes argued that a county did not have authority to enforce ordinances regulating bingo and prohibiting card games inside reservations. 480 U.S. at 205–06, 107 S.Ct. at 1086. The Court agreed. It stated:

[W]hen a State seeks to enforce a law within an Indian reservation under the authority of Pub.L. 280, it must be determined whether the law is criminal in nature, and thus fully applicable to the reservation under § 2, or civil in nature, and applicable only as it may be relevant to private civil litigation in state court.

*Id.* at 208, 107 S.Ct. at 1088. Explaining this distinction between "criminal/prohibitory" laws and "civil/regulatory" laws, the *Cabazon* Court stated:

[I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.

480 U.S. at 209, 107 S.Ct. at 1088. The Court emphasized that a law is not criminal/prohibitory within the meaning of Public Law 280 merely because it is enforceable by both civil and criminal means. *Id.* at 211, 107 S.Ct. at 1089. Any doubts regarding the characterization of a law as criminal/prohibitory or civil/regulatory should be resolved in favor of the Indians. *Twenty–Nine Palms Band of Mission Indians v. Wilson,* 925 F.Supp. 1470, 1474 (C.D.Cal.1996).

The state argues that Minnesota prohibits, rather than regulates, the conduct at issue in these offenses. We disagree. We conclude that the traffic laws in this case are regulatory. As the Ninth Circuit noted in holding that a speeding law is regulatory, the proper inquiry is "whether the prohibited activity is a small subset or facet of a larger, permitted activity." *Confederated Tribes of Colville Reservation v. Washington,* 938 F.2d 146, 149 (9th Cir.1991), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1704, 118 L.Ed.2d 412 (1992). Minnesota does not prohibit driving, but instead generally permits the larger activity of driving, subject to regulatory limitations. *Compare United States v. Marcyes,* 557 F.2d 1361, 1364 (9th Cir.1977) (classifying Washington's fireworks statute as criminal/prohibitory because, with very limited exceptions, state prohibited all private sale and possession of fireworks) *with Cabazon,* 480 U.S. at 211, 107 S.Ct. at 1089 ("In light of the fact that California permits a substantial amount of gambling activity, * * * we must conclude that California regulates rather than prohibits its gambling in general * * *.").

We note that three of the offenses—speeding, no seatbelt, and failure to have a child in a child restraint—are petty misdemeanors and enforced only with a fine. Minn.Stat. §§ 169.685, subd. 5, 169.89 (1996). The regulatory nature of the statutes is further shown by the facts that (1) the fine for a child restraint violation may be waived if the violator complies with the statute within 14 days, Minn.Stat. § 169.685, subd. 5, and (2) a no-seatbelt violation cannot by itself be the basis of a traffic stop. *State v. Fiebke,* 554 N.W.2d 755, 757–58 (Minn.App.1996).

Furthermore, application of *Cabazon's* "shorthand test"—which focuses on public policy—also supports our decision. While we recognize that Minnesota may have an interest in preventing speeding and ensuring that motorists are properly restrained, we must also be concerned with the protection of Indian sovereignty from state interference. *See Confederated Tribes,* 938 F.2d at 149 ("to look to the Tribes rather than the state for traffic enforcement on the reservation will not detract from Washington's determination to discourage speeding" (footnote omitted)).

With respect to the insurance-related offenses, the requirement that drivers have liability insurance is also a way of regulating the generally permitted activity of driving. As for the shorthand test, Minnesota's public policy is served by allowing the White Earth Band to enforce its own ordinance, which requires applicants for motor vehicle licenses to have liability insurance. Furthermore, the reciprocity agreement between the state and White Earth Band provides:

> [N]othing contained in this agreement shall be construed to exempt the owner or operator of any vehicle transporting persons or property *for hire* from compliance with the laws and regulations of either jurisdiction with respect to the necessity of * * * the filing of insurance coverage * * *.

(Emphasis added.) Because the agreement specifically states that vehicles for hire are not exempt from the state's vehicle insurance laws, it implies that the application of the insurance laws within the reservation is limited to vehicles for hire.

The prevention of motorists driving with an expired registration is also regulatory. And because a White Earth Band ordinance requires registration, the state's public policy is again served by allowing the tribe to enforce its own ordinance. Evidence of this policy may be found in the reciprocity agreement, in which the state agreed that vehicles properly registered with the White Earth Band are exempt from registering with the state. Finally, the two license-related offenses—driving without a license and driving with an expired license—are likewise part of a regulatory scheme because they do not prohibit the larger activity of driving, but merely place limits on it.

We note that in a recent decision, this court determined that Minnesota has jurisdiction, pursuant to the implied consent law, to revoke the driver's license of a tribal member found driving on a reservation with an alcohol concentration above 0.10. *Bray v. Commissioner of Pub. Safety*, 555 N.W.2d 757 (Minn.App. 1996). *Bray* is distinguishable from this case, because as was recognized in *Bray*, Minnesota categorically prohibits driving while intoxicated. *Id.* at 760.

By contrast, there are numerous exceptions to enforcement of the offenses at issue here. *See, e.g.,* Minn.Stat. § 168.012 (1996) (listing vehicles exempt from paying fees under motor vehicle registration law); Minn.Stat. § 168.09, subd. 5 (1996) (listing defenses to failure to renew vehicle registration); Minn. Stat. § 169.791, subds. 1, 2 (1996) (providing that proof of insurance law applies to vehicles as defined in Minn.Stat. § 65B.43, subd. 2, which defines vehicles as those that must be registered under chapter 168, which contains exception for, under Minn.Stat. § 168.04, nonresident military personnel); Minn.Stat. § 169.791, subd. 2 (1996) (providing that driver of vehicle who is not owner of vehicle is not liable under proof of insurance law unless driver knew or had reason to know that vehicle owner had no proof of insurance); Minn.Stat. § 171.03 (1996) (listing exceptions to driver's license requirements).

The state argues that even if Public Law 280 does not expressly delegate jurisdiction over these traffic offenses to the state, it nonetheless has jurisdiction to enforce them. It relies on the Supreme Court's statement in *Cabazon:*

> Our cases, however, have not established an inflexible *per se* rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent. "[U]nder certain circumstances a State may validly assert authority over the activities of non-members on a reservation, and ... in exceptional circumstances a State may assert jurisdiction over the on-reservation activities of tribal members."

480 U.S. at 214–15, 107 S.Ct. at 1091 (footnote omitted) (quoting *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 331–32, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 611 (1983)). The *Cabazon* Court was referring to cases in which it held that even without congressional authorization, states could require tribal smokeshops on Indian reservations to collect state sales tax from non-Indian patrons. *Id.* at 215–16, 107 S.Ct. at 1091. In both cases, the Court held that the state had a sufficient interest in assuring the collection of sales taxes from non-Indians to warrant a minimal burden on smokeshop operators. *Cabazon,* 480 U.S. at 215–16, 107 S.Ct. at 1091–92; *see*

*also Twenty–Nine Palms Band,* 925 F.Supp. at 1477–78 (explaining *Cabazon* decision). The *Cabazon* Court concluded that state jurisdiction was preempted because it interfered with the congressional goal of Indian self-government and traditional notions of tribal sovereignty. 480 U.S. at 216, 107 S.Ct. at 1092.

While the state has an important interest in regulating traffic, the state does not point to any authority showing that this area is an "exceptional circumstance" in which the state may assert jurisdiction. *See id.* at 215, 107 S.Ct. at 1091 (in absence of congressional consent, state may assert jurisdiction over on-reservation activities of tribal members only in "exceptional circumstances"). Here, general federal policies encouraging tribal self-government are paramount.

## DECISION

The traffic statutes at issue are civil/regulatory laws rather than criminal/prohibitory laws and the state has no jurisdiction to enforce them within the White Earth Indian Reservation.

**Affirmed.**