**In the Matter of the WELFARE OF B.F.W.**

**In the Matter of the WELFARE OF B.J.D.**

Nos. C9–96–2070, C4–96–2123.

Court of Appeals of Minnesota.

June 24, 1997.

Review Granted Aug. 26, 1997.

Paul G. Thibeault, Walker, for Appellants B.F.W. and B.J.D.

Earl E. Maus, Cass County Attorney, Charles R. Segal, Jon P. Eclov, Assistant County Attorneys, Walker, for Respondent State.

Considered and decided by SHORT, P.J., and SCHUMACHER and AMUNDSON, JJ.

## OPINION

SCHUMACHER, Judge.

In this consolidated appeal, B.F.W. and B.J.D., two juveniles who are members of the Leech Lake Band of the Minnesota Chippewa Tribe living within the Leech Lake Reservation, challenge their adjudication of

delinquency for underage consumption of alcohol within the reservation in violation of Minn.Stat. § 340A.503, subd. 1(a)(2) (1996). They appeal the district court's denial of their separate motions to dismiss the citations against them for lack of subject matter jurisdiction. We reverse.

## FACTS

B.F.W. and B.J.D. were issued citations on January 1, 1996, in separate incidents occurring on the reservation for underage consumption of alcohol in violation of Minn.Stat. § 340A.503, subd. 1(a)(2) (1996). In both cases, B.F.W. and B.J.D. moved to dismiss for lack of subject matter jurisdiction. The district court denied both motions. Both B.F.W. and B.J.D. pleaded guilty; the court adjudicated them as delinquent and imposed a fine of $25 each.

The cases are now consolidated for appeal, raising the sole issue of whether the state has jurisdiction.

## ISSUE

Does the state have jurisdiction to enforce Minn.Stat. § 340A.503, subd. 1(a)(2) (1996), regulating underage consumption of alcohol, against enrolled members of the Leech Lake Band of the Minnesota Chippewa Tribe within the boundaries of the Leech Lake Reservation?

## ANALYSIS

■ This court is not bound and need not give deference to a district court's legal conclusions. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Subject matter jurisdiction of courts presents a question of law, which this court reviews de novo. *Rupp v. Omaha Indian Tribe,* 45 F.3d 1241, 1244 (8th Cir.1995); *Becker County Welfare Dep't v. Bellcourt,* 453 N.W.2d 543, 544 (Minn.App. 1990), *review denied* (Minn. May 23, 1990). This court should resolve any doubts concerning a statute's purpose in favor of the Indians. *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, 105 S.Ct. 2399, 2403, 85 L.Ed.2d 753 (1985); *Bryan v. Itasca County,* 426 U.S. 373, 392, 96 S.Ct. 2102, 2112, 48 L.Ed.2d 710 (1976).

■ 1. The United States Supreme Court has recognized that although Indian tribes retain attributes of sovereignty, state laws may be applied to tribal Indians on reservations if Congress grants a state authority to do so. *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987). Congress granted certain states authority to enforce state criminal laws within certain Indian reservations in Public Law 280. Pub.L. No. 83–280, 67 Stat. 588 (1953) (codified as amended at 18 U.S.C. § 1162 (1994), 25 U.S.C. § 1321–24 (1994), 28 U.S.C. 1360 (1994)). Public Law 280 also granted states limited, rather than general, civil jurisdiction on reservations. *Cabazon,* 480 U.S. at 208, 107 S.Ct. at 1087. A state has limited authority to enforce civil/regulatory statutes against tribal members on reservation land. *State v. Stone,* 557 N.W.2d 588, 591–92 (Minn.App.1996) (holding that state did not have jurisdiction to enforce civil/regulatory laws governing traffic violations on reservation), *review granted* (Minn. Mar. 18, 1997), *cf. State v. Jackson,* 558 N.W.2d 752, 756 (Minn.App.1997) (finding state jurisdiction over offenses by tribal members residing off reservation), *review granted* (Minn. Mar. 18, 1997). The determination of whether a state court has jurisdiction over conduct on Indian reservations hinges upon whether a law is classified as criminal/prohibitory or civil/regulatory.

■ In *Cabazon,* the Supreme Court provided the determinative criteria:

> [I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.

*Cabazon,* 480 U.S. at 209, 107 S.Ct. at 1088; *accord Confederated Tribes of Colville Reservation v. Washington,* 938 F.2d 146, 149 (9th Cir.1991), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1704, 118 L.Ed.2d 412 (1992) (noting

proper inquiry is whether prohibited activity is small subset or facet of larger permitted activity). A law is not criminal/prohibitory simply because the law is enforceable by criminal as well as civil means. *Cabazon*, 480 U.S. at 211, 107 S.Ct. at 1089.

This court determined in *Bray v. Commissioner of Pub. Safety*, 555 N.W.2d 757 (Minn. App.1996), that Minnesota has jurisdiction, pursuant to the implied consent law, to revoke the driver's license of a tribal member found driving on a reservation with an alcohol concentration above 0.10. *Id.* at 761. In *Bray*, this court noted that Minnesota categorically prohibits driving while intoxicated. *Id.* at 760. By contrast, in *Stone* this court held that Minnesota did not have jurisdiction to enforce a number of traffic laws because driving is generally permitted and there were "numerous exceptions to enforcement of the offenses at issue." *Stone*, 557 N.W.2d at 592.

Just like the activity of driving in *Stone*, Minnesota generally allows a person to consume alcoholic beverages. By making it illegal for persons under 21 to drink alcoholic beverages, the state is merely prohibiting a small subset of the larger permitted activity of alcohol consumption. *See Confederated Tribes*, 938 F.2d at 149 (noting that proper inquiry is whether prohibited activity is subset of larger permitted activity). As B.F.W. and B.J.D. note, under Minn.Stat. § 340A.503, subd. 1(a)(2), even minors are permitted to consume alcohol if they do so "in the household of the defendant's parent or guardian and with the consent of the parent or guardian." They also point out that the law prohibiting underage consumption is codified in Minn.Stat. § 340A.503, which has been designated as "Retail Sales Regulations." We find B.F.W. and B.J.D.'s arguments persuasive and conclude that because Minnesota does not categorically prohibit the consumption of alcoholic beverages, section 340A.503, subd. 1(a)(2), is civil/regulatory rather than criminal/prohibitory.

2. The state also argues that Congress has specifically authorized state regulation in this area. *See Rice v. Rehner*, 463 U.S. 713, 734–35, 103 S.Ct. 3291, 3303–04, 77 L.Ed.2d 961 (1983) (holding that California's state licensing scheme was specifically authorized by Congress and did not interfere with federal policies concerning the reservation). In *Rice*, the Court noted that by enacting 18 U.S.C. § 1161 Congress delegated jurisdiction to the states and to the tribes themselves to regulate Indian liquor transactions. *Id.* at 733, 103 S.Ct. at 3303.

The Court's decision in *Rice*, however, is distinguishable from this case. First, the Court in *Rice* was concerned with liquor *transactions* rather than purely liquor *consumption*, which is at issue in this case. Second, the Court noted that the state had a particular regulatory interest where liquor transactions were at issue because of the " 'off-reservation effects that necessitate State intervention.' " *Id.* at 724, 103 S.Ct. at 3298 (quoting *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 336, 103 S.Ct. 2378, 2388, 76 L.Ed.2d 611 (1983)). In this case, however, the juveniles were consuming alcohol on the reservation and the state does not argue that there are any off-reservation effects that necessitate state intervention. Rather, the state's only enumerated concern is that this court not "send the message that all persons under twenty-one years may consume alcohol while on an Indian Reservation in the State of Minnesota." We conclude that Congress has not specifically authorized state regulation of alcohol consumption within Indian reservations.

3. Alternatively, the state argues that this court should follow the preemption analysis set forth by the United States Supreme Court in *Cabazon, Mescalero, & White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), to determine whether the state may regulate underage consumption of alcohol on the reservation. The state argues that absent a congressional grant of authority to regulate underage consumption of alcohol on the reservation, the state may exert jurisdiction in this case if (1) the state's interest is compatible with the federal and tribal interest and (2) the state has an interest in regulating. The states relies on the Supreme Court's statement in *Cabazon* that Supreme Court caselaw

ha[s] not established an inflexible per se rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent. "[U]nder *certain circumstances* a State may validly assert authority over the *activities of non-members on a reservation,* and * * * in *exceptional circumstances* a State may assert jurisdiction over the *on-reservation activities of tribal members.*"

*Cabazon,* 480 U.S. at 214–15, 107 S.Ct. at 1091 (emphasis added) (quoting *Mescalero,* 462 U.S. at 331–32, 103 S.Ct. at 2385).

Unlike this case, which involves only the activities of Indians on the reservations, the preemption cases cited by the state address a state's jurisdiction where the activities of non-Indians are at issue. Both of the cases referred to by the Court in *Cabazon* involved nontribal members' transactions within reservations. *See id.* (citing *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980)). In those cases, the Court concluded that the state's interest in assuring the collection of sales taxes from non-Indians was sufficient to warrant the minimal burden imposed on tribal smokeshop operators. Furthermore, the Supreme Court has distinguished between a state's ability to regulate in cases that involve non-Indians rather than Indians. The Supreme Court has stated:

> When *on-reservation* conduct involving only Indians is at issue, *state law is generally inapplicable,* for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest. * * * More difficult questions arise where * * * a State asserts authority over the conduct of non-Indians engaging in activity on the reservation. In such cases we have examined the language of the relevant federal treaties and statutes in terms of both the broad policies that underlie them and the notions of sovereignty that have developed from historical traditions of tribal independence.

*White Mountain Apache Tribe,* 448 U.S. at 144–45, 100 S.Ct. at 2584 (citations omitted) (emphasis added).

Thus, since this case involves only the activities of Indians on the reservations, it is not clear whether preemption analysis is applicable. The state, however, has an exceptionally strong burden when it attempts to regulate on-reservation conduct such as in this case. The state has not indicated that there are any particularly strong state interests justifying the application of the state's regulations.

Even if this court were to apply the preemption analysis as the state suggests, the state has not shown any "exceptional circumstances" necessary to justify assertion of state jurisdiction over the on-reservation activities of tribal members in the absence of express congressional authorization. *See Cabazon,* 480 U.S. at 214–15, 107 S.Ct. at 1091 (holding in absence of authority under Public Law 280, states possess authority to enforce laws within reservations boundaries only in exceptional circumstances); *see also Stone,* 557 N.W.2d at 593 (finding no exceptional circumstances justifying state exercise of jurisdiction under regulatory traffic laws). Therefore, we conclude that the state does not have authority to regulate underage consumption of alcohol on the reservation and the district court should have dismissed the charges against B.F.W. and B.J.D. for lack of subject matter jurisdiction.

## DECISION

The state does not have jurisdiction to enforce its underage alcohol consumption statute against B.F.W. and B.J.D. because Congress has not authorized state regulation of alcohol within Indian reservations and there are no "exceptional circumstances" justifying assertion of state jurisdiction.

**Reversed.**

SHORT, Judge (dissenting).

I respectfully dissent because the underage drinking statute is a criminal/prohibitory law, which state courts have jurisdiction to enforce on reservation land.

Public Law 280 granted the State of Minnesota broad criminal jurisdiction over offenses occurring on the Leech Lake Indian Reservation. *See* Pub.L. No. 83–280, 67 Stat. 588 (1953) (codified as amended at 18 U.S.C. § 1162 (1994), 28 U.S.C. § 1360 (1994)) (providing all Indian country within Minnesota, except Red Lake Reservation, is subject to state criminal jurisdiction coextensive with jurisdiction outside Indian country); *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987) (recognizing Public Law 280's broad grant of criminal jurisdiction). A state's ability to enforce its laws on reservation land is dependent on the criminal/prohibitory or civil/regulatory character of the law at issue. *Id.* at 209–10, 107 S.Ct. at 1088–89. Generally, state laws intended to prohibit certain conduct are criminal/prohibitory and enforceable under Public Law 280. By contrast, those laws which permit certain conduct subject to regulation are civil/regulatory and fall outside the state's jurisdiction. *Id.* at 209, 107 S.Ct. at 1088; *see Confederated Tribes v. Washington,* 938 F.2d 146, 147 (9th Cir.1991) (distinguishing state laws that absolutely prohibit certain acts from state laws generally permitting conduct subject to regulation), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1704, 118 L.Ed.2d 412 (1992). The shorthand test is whether the conduct at issue violates state public policy. *Cabazon,* 480 U.S. at 209, 107 S.Ct. at 1088.

The underage drinking law does not merely regulate alcohol consumption. It absolutely prohibits the consumption of alcohol by persons under 21 years of age, subject only to the affirmative defense of consumption in a parent's household with parental consent. Minn.Stat. § 340A.503, subd. 1(a)(2) (1996); *see also United States v. Marcyes,* 557 F.2d 1361, 1364 (9th Cir.1977) (concluding statute generally prohibited possession of dangerous fireworks, although it allowed for limited exceptions). There exists no mechanism by which a minor can obtain the privilege to consume alcoholic beverages outside the family home. *See id.* (recognizing distinction between regulatory licensing laws and statutes generally prohibiting given conduct); *cf. State v. Stone,* 557 N.W.2d 588, 592 (Minn. App.1996) (finding traffic statutes that conditioned driving privileges on various types of licensure, including those proscribing driving with expired registration or no license, to be civil/regulatory), *review granted* (Minn. Mar. 18, 1997). The law's purpose is to prevent the general use of alcohol by minors, in an effort to promote the health and safety of minors themselves, as well as those affected by their conduct. *Cf. St. Germaine v. Circuit Court,* 938 F.2d 75, 77 (7th Cir.1991) (recognizing state's important public policy of protecting lives and property on and off reservation), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1704, 118 L.Ed.2d 412 (1992). Thus, the consumption of alcohol by those under age 21 violates the public policy of this state.

It is a mistake to address underage drinking simply as a subset of the larger category of alcohol consumption. *See Confederated Tribes,* 938 F.2d at 149 (noting proper inquiry in Public Law 280 analysis is whether prohibited activity is small subset or facet of larger, permitted activity); *see, e.g., Cabazon,* 480 U.S. at 210–11, 107 S.Ct. at 1089 (concluding that although state prohibited high stakes bingo, it allowed gambling in other forms). While Minnesota generally permits the consumption of alcohol by adults, consumption by minors raises sufficiently increased policy concerns such that the legislature proscribed this conduct outright. *See generally* Minn.Stat. § 340A.501–.506 (1996) (permitting retail sales of alcohol to persons over 21 years of age who are not obviously intoxicated, subject to regulation of time of sale and types of alcohol sold). We should not disregard this clear legislative statement of public policy. *Cf. Marcyes,* 557 F.2d at 1364 (refusing to circumvent legislature's determination that possession of fireworks was dangerous to citizens' general welfare).

Because Minn.Stat. § 340A.503 (1996) prohibits underage consumption of alcohol, the law is criminal/prohibitory in nature and enforceable under Public Law 280. Accordingly, I would affirm the trial court's exercise of jurisdiction over the offenses committed on reservation land by B.F.W. and B.J.D.