STATE of Minnesota, petitioner,
Appellant,

v.

Vernon Dale ROBINSON, Respondent.

No. C1–97–1005.

Supreme Court of Minnesota.

Dec. 11, 1997.

John J. Muhar, Itasca County Atty., Michael J. Haig, Asst. Itasca County Atty., Grand Rapids, for appellant.

Kimball and Strandlie, Christopher J. Strandlie, Walker, for respondent.

## OPINION

KEITH, Chief Justice.

This appeal requires us to ascertain the scope of the State of Minnesota's jurisdiction over certain statutory violations committed by members of an Indian tribe within the boundaries of the tribe's reservation. Vernon Dale Robinson, a member of the Leech Lake Band of Chippewa Indians, was charged with consumption of alcohol by a person under age 21, failure to yield to an emergency vehicle, and fleeing a police officer. The district court dismissed the underage consumption and failure to yield charges, finding that the state lacked authority to enforce them against a tribal member for conduct occurring on the reservation. The district court also dismissed the fleeing

charge for lack of probable cause. This court granted accelerated review.

We reverse in part and affirm in part.

### I.

The facts are undisputed. Vernon Dale Robinson, 19, is an enrolled member of the Leech Lake Band of Chippewa Indians. On April 2, 1997, Itasca County Deputy Darin Shevich[1] saw Robinson driving a motor vehicle on County Highway 158 in Itasca County. Deputy Shevich, aware that Robinson did not have a driver's license, activated his squad car lights and sirens in an attempt to stop Robinson. Robinson continued driving for approximately five miles at a speed of 30 to 35 miles per hour. As Robinson turned on to County Road 35, Deputy Shevich pulled in front of Robinson's vehicle and slowed down, and Robinson eventually stopped.

After removing Robinson and two passengers from the vehicle, Deputy Shevich searched the car and found a can of Olde English malt liquor underneath the seat. Deputy Shevich administered a Preliminary Breath Test (PBT) to Robinson and the passengers. Only Robinson failed the PBT. Both the pursuit and the stop took place on the Leech Lake Reservation. Robinson was subsequently charged with (1) failure to yield in violation of Minn.Stat. § 169.20, subd. 5 (1996);[2] (2) underage consumption of alcohol in violation of Minn.Stat. § 340A.503, subd. 1(a)(2) (1996);[3] and (3) fleeing a police offi-

---

1. The district court below mistakenly identified the arresting officer as Deputy Sunde. Deputy Sunde drafted the complaint.

2. Minnesota Statutes § 169.20, subd. 5 provides: Upon the immediate approach of an authorized emergency vehicle equipped with at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle and, except where otherwise not required by law, when the driver is giving audible signal by siren, the driver of each other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in this position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer. * * * *

Violation of subd. 5 is a petty misdemeanor. Minn.Stat. § 169.20, subd. 5b. In addition, subd. 5a states that a citation may be issued in lieu of arrest if the police officer has probable cause to believe that the driver violated subd. 5.

3. Minnesota Statutes § 340A.503, subd. 1(a)(2) provides:

It is unlawful for any person under the age of 21 years to consume any alcoholic beverages. If proven by a preponderance of the evidence, it is an affirmative defense to a violation of this clause that the defendant consumed the alcoholic beverage in the household of the defendant's parent or guardian and with the consent of the parent or guardian.

Violation of this subdivision is a misdemeanor. Minn.Stat. § 340A.703.

cer in violation of Minn.Stat. § 609.487, subd. 3 (1996).[4]

The matter was submitted to the district court on documentary evidence. The district court found that the failure to yield and the underage consumption charges were not criminal under Public Law 280 and therefore, the state lacked jurisdiction to enforce them. Although the court found that the fleeing charge was criminal and the state did have jurisdiction to enforce it against Robinson, it dismissed that charge based on insufficient probable cause. This direct appeal followed.

## II.

■■ Generally, Indian tribes retain sovereignty over their members within the boundaries of their reservations and state law is not applicable to Indians within Indian Country[5] without the consent of Congress. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987) (citation omitted). The state maintains that Congress granted the requisite jurisdiction to Minnesota to enforce these laws against tribal members when it enacted Public Law 280 (codified at 18 U.S.C. § 1162 and 28 U.S.C. § 1360 (1994)).[6] Public Law 280 grants jurisdiction to the State of Minnesota to enforce a law against an Indian within an Indian reservation only if the law is criminal/prohibitory

and not civil/regulatory. *Cabazon*, 480 U.S. at 208, 107 S.Ct. at 1087–88.

In *Cabazon*, the United States Supreme Court adopted the following test to distinguish between criminal and civil laws for purposes of Public Law 280:

> If the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.

*Id.* at 209, 107 S.Ct. at 1088. In applying this test to state laws, courts have disagreed as to what conduct is "at issue." Some courts have focused on the narrow conduct that the law specifically prohibits, while other courts have examined the broader activity that the law addresses. *Compare Bray v. Commissioner of Public Safety*, 555 N.W.2d 757 (Minn.App.1996) (finding implied consent law is criminal/prohibitory because it categorically prohibits driving while intoxicated), *with State v. Stone*, 557 N.W.2d 588 (Minn. App.1996), *pet. for rev. granted*, (Minn. March 18, 1997) (finding numerous traffic laws are regulatory because driving is gener-

---

**4.** Minnesota Statutes § 609.487, subd. 3 provides:

Whoever by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer, may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both. Whoever violates this subdivision a second or subsequent time is guilty of a felony and may be sentenced to imprisonment for not more than one year and one day or to payment of a fine of not more than $3,000, or both.

**5.** "Indian Country" as defined in 18 U.S.C. § 1151 (1988) includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation." The Supreme Court has instructed that this definition is applicable to questions of criminal and civil jurisdiction. *California v. Cabazon*, 480

U.S. 202, 207, n. 5, 107 S.Ct. 1083, 1087, n. 5, 94 L.Ed.2d 244 (1987).

**6.** Section 2 of Public Law 280 gives six states broad criminal jurisdiction:

over offenses committed by or against Indians in the areas of Indian country listed * * * to the same extent that such State * * * has jurisdiction over offenses committed elsewhere within the State * * *, and the criminal laws of such State * * * shall have the same force and effect within such Indian country as they have elsewhere within the State * * *.

Section 4 of Public Law 280 provides that the states have jurisdiction over civil causes of actions arising in Indian country and to which an Indian is a party:

to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State * * *.

ally permitted). To eliminate this inconsistency, in *State v. Stone,* 572 N.W.2d 725 (Minn.1997) we enunciated a two-step approach for applying the *Cabazon* test.

The first step of our approach is to determine the proper focus of the *Cabazon* analysis. Generally, the broad conduct (in this case alcohol consumption) will be the focus of the test *unless* the narrow conduct (in this case *underage* alcohol consumption) presents substantially different or heightened public policy concerns compared to those underlying the broad conduct. If such a difference exists, the narrow conduct will be the focus of the test. After identifying the conduct on which to focus, the second step is to apply the *Cabazon* standard to determine if the law is criminal or civil. If the conduct is generally permitted, subject to exceptions, the law is civil/regulatory. If the conduct is generally prohibited, the law is criminal/prohibitory.

■ As we explained in *Stone,* in some circumstances, the outcome under this standard will be equivocal. For further clarification, we looked to *Cabazon's* "shorthand public policy test" which instructs that if a law violates the state's public policy, it is criminal. In sum, we stated that a law will be classified as criminal under Public Law 280 if a violation of the law also constitutes a breach of the state's public criminal policy. The following four factors are instructive in determining whether a statutory violation is also a breach of the state's public criminal policy: (1) the extent to which the activity directly threatens physical harm to persons or property or invades the rights of others; (2) the extent to which the law allows for exceptions and exemptions; (3) the blameworthiness of the actor; and (4) the nature and severity of the law's potential penalties. This list of factors is not exhaustive, and no single factor is dispositive.

In this case, we must first determine whether the prohibition against underage drinking raises substantially different or heightened public policy concerns compared to the policies underlying alcohol consumption generally. Minnesota Statutes § 340A.503, subdivision 1 provides in part:

(a) It is unlawful for any:

(2) person under the age of 21 years to consume any alcoholic beverages. If proven by a preponderance of the evidence, it is an affirmative defense to a violation of this clause that the defendant consumed the alcoholic beverage in the household of the defendant's parent or guardian and with the consent of the parent or guardian.

Minnesota Statute § 340A.503 is part of Minnesota's Liquor Act (Act) contained in Minn.Stat. Ch. 340A.[7] The underage drinking prohibition is found in the portion of the Act entitled "Retail Sales Regulations." This section is composed primarily of laws regulating the time, place, and manner of retail liquor sales. *See generally* Minn.Stat. §§ 340A.501–604.[8]

In contrast, Minn.Stat. § 340A.503 does not merely address the circumstances under which alcohol may be sold to adults, but it strictly prohibits anyone under age 21 from consuming alcohol. This court has specifically emphasized the public policy interests in preventing *minors* from consuming alcohol. *See Holmquist v. Miller,* 367 N.W.2d 468, 471 (Minn.1985) (noting that the court has incorporated into prior case holdings the public policy of protecting minors from drinking alcohol); *see also Trail v. Christian,* 213 N.W.2d 618, 626 n. 13, 298 Minn. 101, 114 n. 13 (1973) (stating that Minnesota's prohibition against selling alcohol to minors is to protect the public). Similarly, Judge Short made this public policy distinction in *In re B.F.W.* where she emphasized, "While

7. The laws comprising the Liquor Act generally regulate the manner in which retailers, distributors, and wholesalers may conduct business in the liquor industry. *See generally* Minn.Stat. §§ 340A.101–907.

8. Minnesota Statutes § 340A.501 confers responsibility for liquor sales on the licensee. Minnesota Statutes § 340A.504 sets the standards for hours and days of sale. Minnesota Statutes

§ 340A.506 prohibits sale of ethyl alcohol and neutral spirits as beverages. Minnesota Statutes § 340A.507 regulates advertising. Minnesota Statutes §§ 340A.508, 340A.510, 340A.511 and 340A.512 restrict the nature and size of liquor containers. Minnesota Statutes §§ 340A.601, 340A.602, and 340A.604 address the establishment and continuation of a retail sales establishment.

Minnesota generally permits the consumption of alcohol by adults, consumption by minors raises sufficiently increased policy concerns that the legislature proscribed this conduct outright." 564 N.W.2d 226, 230 (Minn.App.1997) *pet. for rev. granted,* (Minn. August 26, 1997) (Short, J., dissenting).

Unlike the time and place regulations restricting sales to adults, which serve primarily to ensure that alcohol is consumed under appropriate circumstances, the prohibition against underage drinking operates directly to protect both minors and the public from physical and other injuries resulting from alcohol consumption. Consequently, we conclude that the public policy underlying the prohibition of underage drinking is substantially different and heightened as compared to public policy concerns behind the regulation of alcohol consumption in general. Therefore, the focus of the *Cabazon* test in this case is the narrow conduct of *underage* drinking.

Minnesota Statutes § 340A.503, subd. 1(a)(2) strictly prohibits underage alcohol consumption, which indicates that the law is criminal. This conclusion is further supported by our four-factor public criminal policy analysis. First, the primary purpose of the law is to prevent physical injury to both the minors themselves and the general public. *See In re B.F.W.,* 564 N.W.2d at 230 (Short, J., dissenting). This injury can be direct, as in the case of alcohol poisoning, or indirect, as in the case of an alcohol-related traffic accident. Second, this prohibition has no explicit exceptions and is subject to only one affirmative defense. A minor is not guilty of this offense only if the minor proves by a preponderance of the evidence that he or she consumed the alcohol in the household of and with the permission of a parent or guardian. Third, the minor drinker bears some culpability in that consumption requires active participation rather than passive compliance or silent acquiescence in an illegal activity. Finally, the legislature has provid-

ed for a criminal misdemeanor penalty of up to 90 days in jail and/or a $700 fine for violation of the prohibition. *See* Minn.Stat. §§ 340A.703 and 609.02, subd. 3. This four-factor inquiry reinforces our conclusion that a violation of Minn.Stat. § 340A.503, subd. 1(a)(2) is also a breach of Minnesota's public criminal policy.

Under our two-step application of the *Cabazon* test, Minn.Stat. § 340A.503, subd. 1(a)(2), which prohibits consumption of alcohol by a person under age 21, is criminal and consequently, Public Law 280 authorizes the State of Minnesota to enforce it against a tribal member on the Leech Lake Reservation.[9] Accordingly, we reverse the district court's dismissal of the minor consumption charge for lack of jurisdiction.

### III.

█ However, in accordance with this court's reasoning in *Stone, supra,* we affirm the district court's ruling that Minn.Stat. § 169.20, subd. 5 (failure to yield to an emergency vehicle), a petty misdemeanor, is a civil law and the state lacks jurisdiction under Public Law 280 to enforce it against an enrolled member on a reservation.

We also hold that there are no exceptional circumstances otherwise warranting state jurisdiction in this case.[10]

### IV.

We further conclude that the district court did not err in its findings of fact and conclusions of law dismissing the fleeing charge.

Affirmed in part; reversed in part.

---

9. We note that although Robinson was 19 at the time of this offense, the result would not change if he had been under age 18. The legislature has determined, and we agree, that the public policy concerns remain the same for all drinkers under age 21.

10. For a thorough discussion of this issue, *see State v. Stone,* 572 N.W.2d 725, —— (Minn. 1997).