**STATE of Minnesota, Respondent,**

v.

**Charles William ZORNES, Appellant.**

No. C6–98–54.

Court of Appeals of Minnesota.

Sept. 22, 1998.

Hubert H. Humphrey III, Attorney General, Nancy J. Bode, Assistant Attorney General, St. Paul, and Joseph Evans, Becker County Attorney, Detroit Lakes, for respondent.

John M. Stuart, State Public Defender, Lyonel Norris, Assistant State Public Defender, Minneapolis, for appellant.

Considered and decided by KALITOWSKI, P.J., AMUNDSON and WILLIS, JJ.

## OPINION

WILLIS, Judge.

Appellant Charles Zornes challenges his conviction for driving after cancellation of his license as inimical to public safety, contending that the state lacks jurisdiction to enforce the applicable statute against a member of an American Indian tribe on reservation land. We affirm.

## FACTS

On March 6, 1997, a Becker County sheriff's deputy on routine patrol saw a car stopped on the shoulder of a road on the White Earth Indian Reservation. The car was in neutral gear with the engine running. Appellant Charles Zornes, an enrolled member of the White Earth Band of Ojibwe who resides on the reservation, was asleep or passed out behind the wheel. The deputy administered field sobriety tests, which Zornes failed. A breath test showed that

Zornes's alcohol concentration was .09, but a license check disclosed that Zornes's driver's license had been cancelled as inimical to public safety following his sixth DWI conviction.

Zornes was charged with a gross misdemeanor count of driving after cancellation. He moved to dismiss the charge on the ground that Minnesota does not have jurisdiction over such an offense when committed on a reservation by a tribal member. The district court denied the motion, and the parties submitted the case on stipulated facts, while preserving Zornes's right to appeal the jurisdiction issue. The court found Zornes guilty and sentenced him to probation and a fine, staying the sentence for six months pending this appeal. We affirm.

## ISSUE

Did the district court err in concluding that it had subject matter jurisdiction over the offense of driving after cancellation of a license for public safety reasons when the offense was committed by a tribal member on a reservation?

## ANALYSIS

 The existence of jurisdiction is a legal question, which this court reviews de novo. *State v. Stone*, 557 N.W.2d 588, 590 (Minn.App.1996), *aff'd*, 572 N.W.2d 725 (Minn.1997).

 The supreme court provides an extensive discussion of the legal framework relevant to this case in its *Stone* opinion. Tribal sovereignty is subordinate only to the federal government, not to the states, absent an express delegation of power by Congress or certain exceptional circumstances. *Stone*, 572 N.W.2d at 728, 731 (citing *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207, 215, 107 S.Ct. 1083, 1087, 1091, 94 L.Ed.2d 244 (1987)). But Congress, in a 1953 enactment known as Public Law 280, has expressly delegated to Minnesota criminal jurisdiction over most of the reservation territory within the state.[1] *Id.* at 728–29 (citing Pub.L. No. 83–280, 67 Stat. 588, 588–89 (1953) (codified as amended in scattered

sections of 18, 25, and 28 U.S.C.)). The purpose of this grant of authority was to combat a perceived problem of lawlessness on certain reservations that lacked adequate tribal law enforcement. *Id.* at 729 (citing *Bryan v. Itasca County*, 426 U.S. 373, 379, 96 S.Ct. 2102, 2106, 48 L.Ed.2d 710 (1976)). But Public Law 280 does not allow enforcement of all state civil or regulatory laws, even if those laws provide for criminal penalties. *Id.* (citing *Cabazon Band*, 480 U.S. at 209, 107 S.Ct. at 1088). As stated by the United States Supreme Court,

if the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.

*Cabazon Band*, 480 U.S. at 209, 107 S.Ct. at 1088. The Supreme Court in *Cabazon Band* concluded that gambling, and in particular bingo, was a regulated rather than a prohibited activity in California and that Public Law 280 therefore did not grant California authority to enforce on reservation territory its statutes regulating bingo.

As the Minnesota Supreme Court has noted,

[t]he *Cabazon* test admits of some ambiguity. The Supreme Court did not clearly state whether the "conduct at issue" to be analyzed is the broad conduct, such as gambling, or the narrow conduct, such as bingo. This distinction becomes crucial when the broad conduct is generally permitted, but the narrow conduct is generally prohibited.

*Stone*, 572 N.W.2d at 729. *Stone* is a consolidated case concerning the state's jurisdiction over a number of traffic offenses committed on the White Earth reservation. The Minnesota Supreme Court rejected a "rigid" application of either a broad standard, under which all traffic statutes would be considered

1. The Red Lake reservation was not included in Public Law 280's grant of authority, and the state later retroceded authority over the Nett Lake reservation.

as regulation of the generally permitted conduct of driving, or a narrow standard, under which each offense would be considered as a discrete form of prohibited conduct. Rather, the court concluded that "[t]he broad conduct will be the focus of the test *unless* the narrow conduct presents substantially different or heightened public policy concerns." *Id.* at 730.

The court in *Stone* concluded that the offenses concerned in that case—driving without a license or with an expired license, driving with an expired registration, failure to provide insurance or proof of insurance, speeding, and failure to use a seat belt or a child restraint seat—are all regulatory and thus not subject to Public Law 280. *Id.* at 730–31. The court reasoned that the purpose of the statutes creating these offenses is to further the state's general interest in protecting "the safety of persons and property on the roadways," which in the case of driver's license requirements includes "ensuring the competency of drivers." *Id.* at 730. Although the court noted that the statutes relating to insurance and vehicle registration also served other purposes, it concluded that these purposes were not sufficiently distinct from general road safety policies to separate the offenses from the broad conduct of driving for purposes of the *Cabazon* test. *Id.* at 731.

The *Stone* court stated in dictum that the laws prohibiting driving while intoxicated and careless driving would present sufficient public policy concerns to be considered as "criminal" statutes because "their violation creates a greater risk of direct injury to persons and property on the roadways." *Id. See generally In re Estate of Bush,* 302 Minn. 188, 207, 224 N.W.2d 489, 501 (1974) (stating that dicta are entitled to "considerable weight" if they contain "an expression of the opinion of the court"). In a companion case, the supreme court concluded that the statute prohibiting underage consumption of alcohol reflects public policy concerns sufficiently distinct from those underlying other laws regulating the consumption and sale of alcohol to permit

its enforcement on reservation territory. *State v. Robinson,* 572 N.W.2d 720, 724 (Minn.1997). There is no other published caselaw applying the *Stone* test, but this court earlier upheld the enforcement of the state's implied consent law on reservation land because "Minnesota does not seek merely to regulate driving while intoxicated: it categorically prohibits such driving." *Bray v. Commissioner of Pub. Safety,* 555 N.W.2d 757, 760 (Minn.App.1996).

It is within this framework that we consider the statutes at issue. Zornes was convicted of violating Minn.Stat. § 171.24, subd. 5 (Supp.1997), pursuant to which it is a gross misdemeanor to drive if one's license has been cancelled on the ground provided by Minn.Stat. § 171.04, subd. 1(9) (1996).[2] The Commissioner of Public Safety may cancel any driver's license that could have been denied if applied for at the time of cancellation. Minn.Stat. § 171.14 (1996). Section 171.04, subdivision 1(9), allows the commissioner to deny a driver's license to

> any person when the commissioner has good cause to believe that the operation of a motor vehicle on the highways by such person would be inimical to public safety or welfare.

■ Although the phrase "inimical to public safety or welfare" is broad, the only grounds provided for cancellation in Minnesota's administrative rules promulgated under section 171.04, subdivision 1(9), concern alcohol and controlled substances. *See* Minn. R. 7503.1300 (1997) (permitting cancellation for (1) failure to attend evaluation session or complete prescribed treatment or classes following alcohol- or substance-related incident, (2) a record of three alcohol- or drug-related incidents in five years, three incidents and a special review within ten years of the third incident, or four or more incidents altogether, or (3) consumption of drugs or alcohol after completing rehabilitation). Section 171.24, subdivision 5, thus serves a purpose distinct from the motor vehicle licensing

---

**2.** An amendment, effective February 1, 1997, added a clause to Minn.Stat. § 171.04, subd. 1 (1996), resulting in the renumbering of other clauses and accompanying revision of the statutes that reference those clauses. The operative language remains the same as at the time of Zornes's arrest.

laws' general purpose of "ensuring the competency of drivers." *See Stone*, 572 N.W.2d at 730. Under the supreme court's dictum in *Stone*, driving while intoxicated gives rise to heightened policy concerns, and under *Bray*, the state may revoke a driver's license under the implied consent law for conduct occurring on reservation territory.[3] *See id.* at 731; *Bray*, 555 N.W.2d at 761. We agree with the state that Minnesota's policies against driving while intoxicated are undermined if a license may be cancelled on the basis of DWI offenses that occurred on a reservation, but such a cancellation cannot be enforced on the reservation by imposing criminal penalties for subsequent driving.

We therefore conclude that the state's interest in enforcing its DWI laws presents policy concerns sufficiently different from general road safety to justify applying the *Cabazon* test to the narrow conduct of driving after a cancellation for public safety reasons rather than to the broad conduct of driving. We have little difficulty concluding that this conduct is not generally permitted. The statute unequivocally prohibits driving after the cancellation of a license and provides for no exceptions, as long as the driver has notice or reasonable cause to know of the cancellation. *See* Minn.Stat. § 171.24, subd. 5. The supreme court has identified several non-exhaustive factors that may be considered in close cases, and while we do not find this case particularly close when the relevant conduct has been identified, we conclude that each of the factors, as the supreme court has applied them in other cases, supports a determination that the statute defining the offense of driving after cancellation as inimical to public safety is prohibitory rather than regulatory. *See Robinson*, 572 N.W.2d at 724 (finding that statute prohibiting underage drinking is criminal because it provides for only one affirmative defense and for misdemeanor penalties, violation requires "active

participation rather than passive compliance or silent acquiescence," and violation indirectly creates risk of injury). We therefore conclude that the district court did not err in determining that Public Law 280 grants the state jurisdiction over this offense when committed by a tribal member on reservation territory.[4]

### DECISION

The state has jurisdiction to enforce Minn. Stat. § 171.24, subd. 5, against a tribal member on reservation land. Because the jurisdiction issue is Zornes's sole argument on appeal, we affirm his conviction.

**Affirmed.**

---

3. Revocation of a license is mandatory under the implied consent law if testing shows an alcohol concentration of 0.10 or more. Minn.Stat. § 169.123, subd. 4(e) (Supp.1997). By contrast, section 171.14 grants the commissioner discretionary authority to cancel a license that would have been denied if applied for at the time of cancellation. *See* Minn.Stat. § 645.44, subd. 15 (1996) (stating that use of word "may" means act

is permissive). We do not consider this difference to be significant for purposes of determining jurisdiction under Public Law 280 because the two statutes serve similar purposes.

4. We express no view as to whether Public Law 280 grants the state jurisdiction over any of the other offenses in section 171.24.