STATE of Minnesota, Respondent,

v.

Julius Ambrose COUTURE, Appellant.

No. C2–98–424.

Court of Appeals of Minnesota.

Jan. 12, 1999.

John M. Stuart, State Public Defender, Marie L. Wolf, Assistant State Public Defender, Minneapolis, MN (for appellant).

Michael A. Hatch, Attorney General, Robert A. Stanich, Assistant Attorney General, St. Paul, MN; and Alan L. Mitchell, St. Louis County Attorney, Duluth, MN (for respondent).

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and SHORT, Judge.

## O P I N I O N

RANDALL, Judge

Appellant argues the district court abused its discretion when it denied his motion for a change of venue on his claim that pretrial publicity rendered it impossible for him to receive a fair trial. Appellant also argues that after the state dismissed the original complaint, the state lacked jurisdiction to file an amended complaint, charging him with driving under the influence. We affirm on all issues.

## FACTS

On July 15, 1997, appellant Julius Couture was involved in a one-car accident in Brevator Township in rural St. Louis County. The accident occurred on the Fond du Lac Reservation. Dean Nelson, chief of the Brevator Volunteer Fire Department, was the first to arrive at the scene. When he arrived, he saw a car in a ditch by the side of the road and Couture sitting in the ditch alongside the car. Nelson asked Couture if he was hurt. Couture said that he was not hurt and told Nelson to "[g]et the H out of here." Couture told Nelson that he had been driving the car. Nelson observed that Couture appeared to have been drinking alcohol. Couture then started walking down the road toward his house.

Roger Smith, a conservation officer for the Fond du Lac Indian Reservation, arrived at the scene shortly after Nelson. After speaking with Nelson, Smith radioed St. Louis County Sheriff's Deputies to inform them that he was at the scene of the accident and that the driver "possibly didn't have a driver's license." The deputies asked Smith to keep Couture at the scene until they arrived. Smith drove up to Couture, told him that a sheriff's deputy would like to speak with him, and invited Couture to take a seat on the back of his truck. Smith asked Couture if he was all right and Couture said he was fine. Smith stated that he detected a strong smell of alcohol and noticed that Couture's speech was slurred and that his walk was slow and off-balance. Smith believed Couture was intoxicated.

St. Louis County Sheriff's Deputy Brian Schilla arrived at the scene and spoke with Nelson and Smith. He then spoke with Couture, who informed him that he was not injured and that he had consumed about six beers before he went into the ditch. Couture declined Schilla's offer to get him medical assistance and did not complain of any injuries. Schilla noted that Couture's walk was slow and unsteady, he smelled strongly of an alcoholic beverage, and his speech was slurred. In Schilla's opinion, Couture was intoxicated. Schilla observed that the road on which the accident occurred was made of gravel and was dry, straight, level, and wide enough for two cars to pass. He also observed tire tracks going straight across the road from the right side of the road and into the ditch.

On July 16, 1997, Couture was charged by complaint filed in St. Louis County District Court with one count of gross misdemeanor driving after cancellation and one count of failing to have proof of insurance. Later, an amended complaint was filed, charging Couture with aggravated driving while under the influence of alcohol in violation of Minn.Stat. § 169.129 (1996), in place of the original charges. The district court accepted the amended complaint at the August 5 omnibus hearing. Couture was convicted following a jury trial. He was sentenced to serve one year at the Northeast Regional Corrections Center and ordered to pay a fine of $3,000 plus fees. In light of Couture's 12 prior convictions for DWI, dating back to 1978, the

district court determined the statutory maximum sentence was appropriate. Couture has completed his sentence and appeals from the judgment of conviction.

## ISSUES

1. Did the district court abuse its discretion when it denied Couture's motion for a change of venue?

2. Did the district court properly rule that the state could charge Couture, a Native American, with a violation of Minn.Stat. § 169.129 (1996) for conduct occurring on reservation land?

## ANALYSIS

Couture argues that the district court should have granted his motion for a change of venue on the ground that pretrial publicity about his case, and repeat DWI offenders in general, prevented him from receiving a fair trial. During the motion hearing, the district court acknowledged its concern about pretrial publicity, but also stated that it was concerned about the costs and logistics of a change of venue. The court denied the motion at that time, stating that the issue could be addressed during voir dire. If a jury panel could not be selected during voir dire, the court made it clear that it would reconsider the motion for a change of venue.

Where a defendant is given the opportunity to renew a motion for change of venue immediately prior to trial but fails to do so, the right to challenge venue is waived. *State v. Brom*, 463 N.W.2d 758, 762 (Minn. 1990). A defendant is deemed to have waived any challenge to venue on the ground of prejudicial pretrial publicity where the defendant fails to challenge any seated juror for cause or to use all of his or her peremptory challenges. *See State v. Buschkopf*, 373 N.W.2d 756, 769 (Minn.1985) (holding district court properly denied change-of-venue motion where defendant did not challenge any seated juror for cause and did not use all peremptory challenges), *abrogated on other grounds, Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

Here, although Couture made a motion for a change of venue before voir dire began, he failed to renew his motion after the jury had been identified. Most importantly, he did not challenge any seated juror for cause and did not use all of his peremptory challenges. We conclude he waived his right to challenge venue on the ground of adverse pretrial publicity.

Even if the issue was properly before us, Couture made no showing that any of the jurors were ever exposed to publicity about his case. During voir dire, prospective jurors were asked if they had read or heard of any news reports about Couture's case or about any of his prior offenses. Only those individuals who had no knowledge of Couture and his case were selected for the jury panel. Even though an article appeared in the Duluth paper about the case on the morning of the first day of trial, no evidence was presented that any of the jurors had been exposed to the article. Couture did not take any action after the verdict to determine whether the jury had been exposed to any pretrial or trial publicity about the case or Couture's past convictions. Couture failed to make any showing that the jury was exposed to, much less improperly influenced by, any pretrial or trial publicity. Absent a showing of actual prejudice, a reviewing court will not reverse a district court's determination not to grant a defense motion for change of venue. *State v. Walen*, 563 N.W.2d 742, 748 (Minn. 1997).

Next, Couture argues that the state could not charge him with driving under the influence of alcohol once the original complaint charging him with driving after cancellation and no proof of insurance was dismissed. Couture insists the original complaint was dismissed because of jurisdictional defects and that such defects are not curable. We disagree. Couture implies that the original complaint was dismissed by the district court pursuant to Minn. R.Crim. P. 17.06, subd. 4(3) (providing complaint may be dismissed by court to allow amended or new complaint to be filed to cure or avoid defect in original complaint). Couture's argument overlooks the fact that the original complaint in this case was dismissed by the prosecutor pursuant to Minn. R.Crim. P. 30.01. Under this rule the prosecutor may dismiss a com-

plaint without leave of the court. Minn. R.Crim. P. 30.01. A dismissal under rule 30.01 is without prejudice, and the state, provided it is not acting in bad faith, may "later reindict based on the same or similar charges." *State v. Pettee*, 538 N.W.2d 126, 131 n. 5 (Minn.1995) (citation omitted). Here, the state was free to file an amended complaint charging appellant with driving while under the influence.

■ Couture also argues that the state lacked jurisdiction to charge him with aggravated driving while under the influence of alcohol in violation of Minn.Stat. § 169.129 (1996) because he is an enrolled member of the Fond du Lac Band of Chippewa and the alleged offense occurred on the Fond du Lac Indian Reservation. Couture contends that driving while under the influence is a civil/regulatory statute and not criminal/prohibitory and is therefore not enforceable against tribal members driving on reservation land.

■ On appeal, this court reviews jurisdictional questions de novo. *State v. LaRose*, 543 N.W.2d 426, 427 (Minn.App.1996). Public Law 280[1] grants Minnesota broad criminal jurisdiction and limited civil jurisdiction over all Indian country within the state, except for limited exceptions such as the Red Lake Reservation in northern Minnesota, which is not an issue here. *State v. Stone*, 572 N.W.2d 725, 728 (Minn.1997). Pursuant to Public Law 280, the State of Minnesota may "enforce a law against an Indian within an Indian reservation only if the law is criminal/prohibitory and not civil/regulatory." *State v. Robinson*, 572 N.W.2d 720, 722 (Minn.1997) (citation omitted). To determine whether a law is criminal/prohibitory or civil/regulatory, Minnesota looks at the analysis set forth in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). *Stone*, 572 N.W.2d at 729–30. This analysis provides that

if the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it

must be classified as civil/regulatory and . Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.

*Cabazon*, 480 U.S. at 209, 107 S.Ct. at 1088.

■ In applying the *Cabazon* test, the Minnesota Supreme Court uses a two-step approach:

The first step is to determine the focus of the *Cabazon* analysis. The broad conduct will be the focus of the test *unless* the narrow conduct presents substantially different or heightened public policy concerns. If this is the case, the narrow conduct must be analyzed apart from the broad conduct. After identifying the focus of the *Cabazon* test, the second step is to apply it. If the conduct is generally permitted, subject to exceptions, then the law controlling the conduct is civil/regulatory. If the conduct is generally prohibited, the law is criminal/prohibitory. In making this distinction in close cases, we are aided by *Cabazon's* "shorthand public policy test," which provides that conduct is criminal if it violates the state's public policy.

*Stone*, 572 N.W.2d at 730. When determining whether a statutory violation breaches the state's public criminal policy, the following factors are instructive:

(1) the extent to which the activity directly threatens physical harm to persons or property or invades the rights or others; (2) the extent to which the law allows for exceptions and exemptions; (3) the blameworthiness of the actor; and (4) the nature and severity of the law's potential penalties.

*Robinson*, 572 N.W.2d at 723. This list is not exhaustive, and no one factor is dispositive. *Id.*

In *Bray v. Commissioner of Pub. Safety*, 555 N.W.2d 757, 761 (Minn.App.1996), this court held that the state has jurisdiction to enforce the implied consent law on tribal members driving on reservation land. The court stated that "Minnesota does not seek merely to regulate driving while intoxicated: it categorically prohibits such driving." *Id.*

1. Codified, as amended, at 18 U.S.C. § 1162(a) (1994), 28 U.S.C. § 1360(a) (1994).

at 760. The court noted further that no federal or tribal interest is advanced by allowing tribal members to drive on reservations while intoxicated and that *Cabazon*

> does not support denying the state the right prohibit intoxicated persons from driving, even when those intoxicated persons are tribal members driving on a reservation.

*Id.* (citations omitted).

Recently, this court held that the state has jurisdiction to enforce Minn.Stat. § 171.24, subd. 5 (Supp.1997), which prohibits driving after cancellation, against tribal members on reservation land. *State v. Zornes,* 584 N.W.2d 7, 11 (Minn.App.1998). In that case, defendant's license had been cancelled as inimical to public safety following his sixth DWI conviction. *Id.* at 9. This court noted:

> Minnesota's policies against driving while intoxicated are undermined if a license may be cancelled on the basis of DWI offenses that occurred on a reservation, but such a cancellation cannot be enforced on the reservation by imposing criminal penalties for subsequent driving.

*Id.* at 11. The court held that "driving while intoxicated gives rise to heightened policy concerns" and that "the state's interest in enforcing its DWI laws presents policy concerns sufficiently different from general road safety." *Id.*

■■■ Minn.Stat. § 169.129 is criminal/prohibitory. The statute categorically prohibits driving while under the influence of alcohol. As the state notes, "The purpose of the DWI laws is not to prohibit driving after consumption, the purpose is to prohibit *all driving while under the influence.*" By enacting the DWI laws, the legislature has determined what level of intoxication and public endangerment is too great to ignore. Contrary to Couture's implication, the DWI laws make no distinction between well-traveled or "little-traveled roads;" the prohibition against driving while under the influence of alcohol applies to drivers on all Minnesota roadways.

Because Minn.Stat. § 169.129 is a criminal/prohibitory law, the state had jurisdiction to charge Couture with a violation of that statute.

Finally, the arguments raised by Couture in his pro se supplemental brief have either been waived or are without merit.

## D E C I S I O N

Couture waived his right to challenge venue when he failed to challenge any seated juror for cause and failed to use his peremptory challenges. The state had jurisdiction to charge Couture with violating Minn.Stat. § 169.129. The statute is a criminal/prohibitory law.

**Affirmed.**