**STATE of Minnesota, Respondent,**

**v.**

**Myron Joseph BUSSE, Jr., Appellant.**

**No. C1–00–481.**

Court of Appeals of Minnesota.

Sept. 5, 2000.

Mike Hatch, Attorney General, St. Paul, MN; and Kip O. Fontaine, Clearwater County Attorney, Jeanine R. Brand, Assistant County Attorney, Bagley, MN (for respondent).

Kevin Miller, Zenas Baer & Associates, Hawley, MN (for appellant).

Considered and decided by SCHUMACHER, Presiding Judge, LANSING, Judge, and KLAPHAKE, Judge.

## OPINION

LANSING, Judge.

Myron Busse, an enrolled member of the White Earth Band of Chippewa Indians, appeals from conviction for driving after cancellation as inimical to public safe-ty in violation of Minn.Stat. § 171.24, subd. 5 (Supp.1999). Busse argues that the state did not have subject-matter jurisdiction over the offense, which took place on the White Earth Reservation. We agree and reverse.

## FACTS

Myron Busse, an enrolled member of the White Earth Band of Chippewa Indians, was stopped by police while driving a vehicle on the White Earth Reservation in December 1999. The state charged Busse with driving after cancellation as inimical to public safety in violation of Minn.Stat. § 171.24, subd. 5 (Supp.1999). For purposes of the omnibus hearing, Busse and the state stipulated to the facts, and Busse moved to dismiss the charge for lack of subject-matter jurisdiction. The district court denied Busse's motion to dismiss. Busse entered a guilty plea under the procedure outlined in *State v. Lothenbach,* 296 N.W.2d 854, 857–58 (Minn.1980), and now appeals the district court's determination that it had jurisdiction over the charged offense.

## ISSUE

Does the district court have subject-matter jurisdiction over a charge of driving after cancellation as inimical to public safety under Minn.Stat. § 171.24, subd. 5 (Supp.1999), when the offense was committed on a reservation by a tribal member?

## ANALYSIS

Subject-matter jurisdiction presents a question of law, which this court reviews de novo. *State v. R.M.H.,* No. C0–99–559, 2000 WL 1201847, at *2 (Minn. Aug.24, 2000). Although Indian tribes retain attributes of sovereignty, states may apply their laws to tribal members on reservations if there is Congressional authorization to do so. *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244

(1987); *State v. Stone*, 572 N.W.2d 725, 728 (Minn.1997). Congress, through Public Law 280, authorized the states to enforce their criminal laws against tribal members for conduct occurring on reservations. *See Cabazon*, 480 U.S. at 207–08 & n. 6, 107 S.Ct. at 1087 & n. 6; *Stone*, 572 N.W.2d at 728–29.

In applying Public Law 280, the Supreme Court has focused on determining whether an offense is criminal or civil/regulatory in nature. *See Cabazon*, 480 U.S. at 208–10, 107 S.Ct. at 1087–89. Neither a law's placement in the criminal code nor a law's imposition of criminal penalties is dispositive of this analysis. *Id.* at 211, 107 S.Ct. at 1089. Rather, the Supreme Court has instructed that the proper inquiry focuses on whether the law is intended to prohibit conduct or merely to regulate otherwise permissible conduct. *Id.* at 209, 107 S.Ct. at 1088.

In *State v. Stone*, the Minnesota Supreme Court adopted a two-part test for determining whether a law is criminal or civil/regulatory. 572 N.W.2d at 730. Under the *Stone* test, the court first determines what conduct is the proper focus of the analysis. *Id.* The proper focus is the broad conduct at issue "*unless* the narrow conduct presents substantially different or heightened public policy concerns." *Id.* After identification of the focus, the analysis turns to whether the focal conduct is criminal or civil/regulatory in nature. *Id.* Conduct that is generally prohibited is criminal, and conduct that is generally permitted but subject to regulation is civil/regulatory. *Id.* In close cases, the court should determine whether the conduct at issue violates this state's public policy. *Id.* In *Stone*, the court enumerated four factors for determining whether a law violates public policy:

1) the extent to which the activity directly threatens physical harm to persons or property or invades the rights of others; (2) the extent to which the law allows for exceptions and exemptions; (3) the blameworthiness of the actor; [and] (4) the nature and severity of the potential penalties for a violation of the law.

*Id.* This list of factors is not exhaustive and no single factor is determinative. *Id.*

Applying the two-part test, the *Stone* court found that none of the following driving violations are criminal: (1) Failure to provide motor vehicle insurance (Minn. Stat. § 169.797 (1996)); (2) No proof of insurance (Minn.Stat. § 169.791 (1996)); (3) Driving with an expired registration (Minn.Stat. § 168.09 (1996)); (4) Driving without a license (Minn.Stat. § 171.02 (1996)); (5) Driving with an expired license (Minn.Stat. § 171.27 (1996)); (6) Speeding (Minn.Stat. § 169.14 (1996)); (7) Driving with no seat belt (Minn.Stat. § 169.686 (1996)); and (8) Failure to have a child restraint seat (Minn.Stat. § 169.685, subd. 5 (1996)). *Id.* at 730–31. The court found that the proper focus was on the broad conduct of driving, which is generally permissible. *Id.* The court thus concluded that because driving is generally permitted, the violations at issue were not criminal. *Id.* at 731.

While the *Stone* court found the broad conduct of driving the proper focus, it recognized that the laws against drinking and driving and reckless or careless driving might raise "substantially different or heightened public policy concerns." *Id.* And, in a companion case, the court held that Minnesota's underage-drinking laws do present heightened public policy concerns different from those raised by laws that merely regulate otherwise permissible consumption and sale of alcohol, and thus that the underage-drinking laws are criminal. *State v. Robinson*, 572 N.W.2d 720, 724 (Minn.1997).

Applying the *Stone* test, this court in *State v. Zornes*, 584 N.W.2d 7 (Minn.App. 1998), found that a charge for driving after cancellation as inimical to public safety was criminal and therefore the state had jurisdiction to enforce Minn.Stat. § 171.24, subd. 5 (Supp.1997), against a tribal mem-

ber who violated the statute on a reservation. *Id.* at 10–11. The *Zornes* court reasoned that the grounds provided for cancellation in the regulations promulgated under Minn.Stat. § 171.24, subd. 5, encompassed only alcohol and certain controlled substance violations. *Id.* at 10 (citing Minn. R. 7503.1300 (1997)). The court concluded that the public policy concerns surrounding drinking and driving justified focusing on the narrower, prohibited conduct of driving after cancellation as inimical to public safety. *Id.* at 11. The court thus found the focal conduct was criminal and that the state had jurisdiction to enforce the law. *Id.*

At least one federal circuit court of appeals has approved the line of reasoning followed in *Zornes.* The Seventh Circuit affirmed a Wisconsin court's conclusion that a charge for driving after revocation for DWI was criminal, and thus that the courts had jurisdiction over the charge. *See Germaine v. Circuit Court for Vilas County (St. Germaine II),* 938 F.2d 75, 77 (7th Cir.1991); *see also State v. St. Germaine (St. Germaine I),* 150 Wis.2d 171, 442 N.W.2d 53, 55 (Wis.Ct.App.1989).

Busse does not dispute that this court in *Zornes* found criminal and thereby enforceable the very section of the Minnesota Statutes under which he was charged. Instead he argues that the Minnesota Supreme Court overruled *Zornes* in its most recent tribal-jurisdiction case, *State v. Johnson,* 598 N.W.2d 680 (Minn.1999).

In *Johnson,* the supreme court held that driving after revocation for failure to produce proof of insurance was a civil/regulatory offense and consequently not within the state's jurisdiction to enforce on a reservation. *Id.* at 684. The court first reaffirmed that driving without a valid license is a civil/regulatory violation and then concluded that consistency required a conclusion that driving after revocation is a civil/regulatory violation as well:

> We would hardly be consistent to now conclude that even though a tribal member is not required to have a driver's license at all while driving on a tribal reservation, driving after revocation of a license should be an offense that rises to the level of a "heightened public policy" concern.

*Id.* (quoting *Stone,* 572 N.W.2d at 730).

Read strictly for its holding, *Johnson* does not overturn *Zornes.* The supreme court in *Johnson* addressed driving after a license revocation that was triggered by an underlying civil/regulatory offense. *See Stone,* 572 N.W.2d at 730–31 (holding that failure to produce proof of insurance is civil/regulatory offense). Thus, addressing either the broad conduct of driving or the narrower conduct of driving after revocation for failure to produce proof of insurance, the violation in *Johnson* was civil/regulatory. These facts distinguish *Johnson* from *Zornes,* which involved a cancellation based on an underlying offense that was criminal.

But, the supreme court in *Johnson* also reasoned that driving after revocation should be considered independently of the predicate prior offense:

> Obviously the prior offense carries its own sanction based upon the severity of the conduct. As each offense is triggered by different and unrelated conduct, the issue might then arise whether fairness should dictate that the nature of the subsequent offense, for purposes of the *Stone* analysis, not be measured by the nature of the prior offense, because if it were the offender could be subject to being sanctioned twice for the prior offense.

598 N.W.2d at 684.

■ After careful review, we conclude that *Johnson* effectively overrules the *Zornes* holding and accordingly we hold that the district court did not have jurisdiction over a charge of driving after cancellation as inimical to public safety in violation of Minn.Stat. § 171.24, subd. 5. The *Zornes* analysis and holding fundamentally rest on consideration of the offense that triggered the cancellation, which the supreme court in *Johnson* found to be inappropriate. Although the court's analy-

sis in *Johnson* arguably is dicta, we accord it considerable weight because it is an expression of the court's opinion. *In re Estate of Bush*, 302 Minn. 188, 207, 224 N.W.2d 489, 501 (1974). Further, while the Seventh Circuit in *St. Germaine II* indicates that a state's laws against driving after cancellation because of DWI charges may be criminal, it does not dictate that result. We conclude that the Minnesota Supreme Court considered and rejected the *St. Germaine* analysis.

■ Under the *Johnson* analysis, the driving after cancellation at issue in *Zornes* and in this case is no different from the driving after revocation at issue in *Johnson*. Thus, we conclude that following *Johnson*, the district courts do not have jurisdiction over charges of driving after cancellation as inimical to public safety in violation of Minn.Stat. § 171.24, subd. 5.

We emphasize that this case involves only driving after cancellation and not a new incident of driving while under the influence of alcohol (DWI). Our holding does not preclude the state from enforcing its DWI laws when a tribal member on a reservation is driving after cancellation as inimical to public safety, and also driving under the influence. *See State v. Couture*, 587 N.W.2d 849, 854 (Minn.App.1999) (holding that state has jurisdiction to enforce DWI laws on reservation), *review denied* (Minn. Apr. 20, 1999); *Bray v. Commissioner of Pub. Safety*, 555 N.W.2d 757, 761 (Minn.App.1996) (holding that state has jurisdiction to enforce implied consent laws on reservation).

### DECISION

Because the district court did not have subject-matter jurisdiction over the charged offense, we reverse the court's order and remand for entry of judgment dismissing the charge against Busse.

**Reversed and remanded.**